THE STATE v. STEPHEN JACOBS.

*Criminal  Practice— Constitution—Presence  of  Prisoner—Right to  Counsel—Escape— Waiver.*

1. In the United States the principle has ever been universally recognized that persons charged with crime had the right to be present at their trial, to be informed of the accusation against them, to confront their accusers and to have the aid of counsel.    It is distinctly guaranteed in the Constitution of North Carolina, but, except in capital felonies, it may be waived.

2. But this right extends only to that tribunal which tries the facts, and where the accused is presumed, on account of his peculiar knowledge, to be able to conduct or assist in the conduct of his defence. It does not prevail in this Court, which has jurisdiction only to review alleged errors of law on the trial below.

3. Where a person who has been convicted of an offence appeals from the judgment, and escapes, the appellate Court may, in its discretion, proceed with the hearing of the exceptions, dismiss the appeal, or direct the cause to be continued to await the recapture of the fugitive, and any judgment it may pronounce thereon will not be invalid because of the fact that the defendant was not actually or constructively in custody, or not represented by counsel.

4. The rule enunciated in *State* v. *McMillan,* 94 N. C., 945, has been altered by the provisions of chapters 191 and 192, Laws 1887.

The defendant was tried and convicted for murder at May Term, 1889, of the Superior Court of ROBESON County. From the judgment then pronounced upon him he appealed. When the cause was reached in its regular order at last term of this Court, it was argued for the State, but there was no counsel for the defendant. The Court considered the defendant's exceptions, and affirmed the judgment of the Superior Court. Thereupon, the Governor issued the warrant for the execution of judgment.

The defendant, in fact, had escaped from custody and was at large when the cause was argued and determined in the Supreme Court, though that fact was not then known to the Attorney General or the Court.

Shortly afterwards, the defendant was recaptured, and the Governor re-issued the warrant for his execution; and now, at this term of the Supreme Court, the defendant made a motion to vacate the orders and judgments made and rendered at last term, and grant him a rehearing upon the exceptions contained in the case on appeal.

The following certificate, upon which the motion of the defendant for a rehearing is made, was filed in this Court on September 29th, 1890:

" I, C. B. Townsend, Clerk of the Superior Court of Robeson, N. C., do hereby certify that Stephen Jacobs, who was lately convicted of murder in this county and who appealed to the Supreme Court, and, pending the appeal, escaped from the jail of Robeson County about August, 1889, and was not recaptured till about August, 1890; that according to the best of his information he, the said Jacobs, was not in the custody of Court during the February Term, 1890, of the Supreme Court, when his appeal was disposed of."

The facts stated in the foregoing affidavit were admitted to be true by the Attorney General.

*The Attorney General*, for the State.
*Mr. B. C. Beckwith*, for the defendant.

AVERY, J.: The exceptions taken by the defendant Jacobs were reviewed at the last term of this Court in a well-considered opinion filed by Justice CLARK, 106 N. C., 695. It now appears by certificate of the Clerk of the Superior Court of Robeson County, and is admitted by the Attorney General for the State, that, at the time when the appeal was heard here, the prisoner Jacobs had escaped from custody and was not recaptured till about August, 1890. Counsel now insist that this Court shall treat the decision made at the February Term as inconclusive upon the prisoner and hear another argument of his appeal, because he was neither actually nor constructively in custody when the exceptions were argued.

In appellate Courts, where questions of law only can be reviewed, and in the absence of any statute specifically regulating the procedure, if there be satisfactory evidence that a defendant, whose appeal is founded upon exceptions entered on the trial below and has been regularly called for hearing, has escaped and is not in actual or constructive custody, it is clearly within the sound discretion of the Court to determine whether the exceptions shall be argued and passed upon, the appeal dismissed, or the hearing postponed to await the recapture of the alleged offender. *Smith* v. *United States*, 94 U. S. Rep., 97; *Bonahan* v. *Nebraska*, 125 U. S. Rep., 692; *Leftwich's* case, 20 Gratt., 722; *Sherman* v. *Commissioners*, 14 Gratt., 677; *McGowan* v. *People*, 104 Ill., 100; *Wilson* v. *Commissioners*, 10 Bush., 522; *State* v. *Sites*, 20 West Va., 16. In the exercise of this power, the Courts of the different States have not adopted uniform rules of practice, even where there are no statutory or constitutional provisions regulating the mode of procedure. But while the general, if not universal, rule has been to

refuse a motion of a defendant who had absconded and put himself in contempt of Court, to dispose of his appeal or make any order affecting it *at his instance or for his benefit,* the Courts of the different States have as a general rule where there was no express statutory requirement in reference to it, and where the prosecuting officer was the moving party, continued, dismissed or heard the appeal according to the circumstances of the case or the early precedents of the particular Court. Anson, 31 Me., 592; *Commissioners* v. *Andrews,* 97 Mass., 544; *People* v. *Genet,* 59 N. Y., 81; *Warwick* v. *State,* 72 Ala., 486.

In *Smith* v. *United States, supra,* WAITE, C. J., delivering the opinion, said: "It is clearly *within our discretion* to refuse to hear a criminal case in error, unless the convicted party suing out the writ is where he can be made to respond to any judgment we may render. * * * If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it, and order a new trial, he will appear, or not, as he may consider most for his interest." The reasoning of the learned Chief Justice has been adopted and his language quoted in many of the more recent decisions as to the right to refuse a request from the defendant that the Court pass upon his exceptions while he is absconding and in contempt. And even where the appellate Courts review the facts, a defendant who escapes pending his appeal is deemed to have waived his right to be present on the final hearing upon his assignment of errors. *Commissioners* v. *Andrews, supra; Wilson* v. *Commissioners, supra; People* v. *Genet, supra.*

The Court of Appeals of Virginia laid down the rule in *Sherman* v. *Commissioners, supra,* that where a prisoner convicted of a felony has obtained a writ of error, which was directed to operate as a *supersedeas,* and then escaped from jail, the appellate Court will discharge so much of the order as awards the *supersedeas,* and direct that the writ of error be dismissed on a day certain, unless the defendant shall have

been meantime re-arrested and placed in custody of the proper officer. The same rule was subsequently adopted in Illinois, West Virginia and Alabama. *McGowan* v. *People*, 104 Ill., 100; *State* v. *Sites, supra; Warwick* v. *State, supra.*

The Courts of Georgia, Indiana and Kentucky have concurred in holding that it is the proper practice to dismiss, on motion of the prosecution, unconditionally, an appeal by one charged with a felony, where it is made to appear satisfactorily that he has escaped custody pending the appeal and is still at large. *Madden* v. *State*, 70 Ga., 383; *Seargeant* v. *State*, 96 Ind., 63; *Wilson* v. *Commissioners, supra.* In Leftwich's case, *supra*, the Court of Appeals of Virginia, having held that the judgment of the Circuit Court, by virtue of which the defendant had been sent to the penitentiary for three years, was erroneous, ordered that he be brought before the appellate Court by *habeas corpus*, when it appeared that he had escaped and was not in custody at the time of the hearing. The Court refused to set aside the judgment sustaining the exceptions of the defendant.

In our case the judgment of the Court below was affirmed here, and the Governor issued the death-warrant by virtue of section 3, ch. 192, Laws of 1887, fixing the time of execution on September 26th, but has respited the prisoner in order that the question presented by the motion before us might be considered. So that, we are confronted with a question not directly raised in any of the cases already cited, though it was discussed, *arguendo*, in a few of them, and covered by the broad propositions stated in others.

In the case of *State* v. *McMillan*, 94 N. C., 945, it was declared to be the settled practice of this Court to refuse the motion of the Attorney General to dismiss appeals where the defendant charged with a felony escaped after filing his exceptions below and was not in custody when the case was called for argument in this Court, and this rule was enforced in two other cases subsequently considered at the same term—

*State* v. *Pickett*, 94 N. C., 971; *State* v. *Brocksville*, *ibid.*, 972. The present Chief Justice, delivering the opinion in *State* v. *McMillan*, said: "The Court will not do a vain and nugatory thing. The appellant may never be re-arrested. \* \* \* The decision would be empty and fruitless. The Court will not, ordinarily, hear and determine an appeal when it sees that its orders and judgments cannot be enforced by itself or through the Superior Court, as the law directs." The provisions of chapters 191 and 192, Laws of 1887, enacted since that opinion was filed, meet the argument that it would prove fruitless to dismiss an appeal, which a defendant has voluntarily waived his right to prosecute, by giving the Clerk or the Governor, or both conjointly, the power to order the original judgment, which has been stayed, not vacated, to be executed or enforced. Since the passage of the acts constituting the chapters mentioned, whether an appeal taken by a defendant in a criminal action be dismissed or affirmed in this Court, the stay of execution will be removed, and the law will require the sentence of the Court to be carried into effect in the manner indicated in the statute, either by warrant of the Governor or by virtue of execution issued directly to the Sheriff of the county. This radical change in the manner of executing the criminal law obviates the objection growing out of the fact that it remains for the Court below not only, under its process, to recapture, but likewise to resentence at a regular term. In *State* v. *McMillan* the Court says: "Besides, to dismiss the appeal might raise embarrassing questions in the Superior Court if the appellant should be re-arrested. Would the dismissal reinstate the judgment of death vacated by the appeal, or operate to leave that judgment in force, as if no appeal had been taken? Could such a result supervene in the absence of the prisoner, whether such absence be occasioned by his escape or otherwise?" The question propounded by the Court has been in part met by the express provision of the

statute, and it remains for us to construe the law so as to answer the interrogatory left open still by deciding whether a judgment of this Court, rendered after the prisoner's escape and before his recapture, would constitute a valid disposition of the appeal, so that the stay of execution below would be removed. The discussion of this point (incidentally and entirely *obiter*) by some of the Courts has given rise to confusion, because of the failure to advert to the fact that counsel were not allowed in England until 1836 (by 6 and 7 William IV, ch. 114) to make a full defence for persons charged with any felony other than treason, while in the United States it was a universal principle of constitutional law that a man accused of a crime (whether a misdemeanor or a felony) was allowed a defence by counsel, both upon the law and the facts. Cooley Cons. Lim., 130 to 135, and notes; *Visc.* v. *Hamilton,* 19 Ill., 18. The right "to have counsel for his defence" is distinctly guaranteed to the accused "in all criminal prosecutions" by an amendment to the original declaration of rights, incorporated in 1868. Constitution, Art. 1, § 2. There is no sufficient reason, and no well considered authority, for restricting the right and duty of counsel who have been employed by a person indicted for a felony, have entered his exceptions and appealed, and aided in settling the statement of case on appeal, so that they will not be allowed or expected, in the discharge of their duty to their clients, to appear in the appellate Court at every stage of the procedure there, whether the client be a fugitive or a prisoner. The relation of counsel and client is such that the former, having once engaged to represent the latter, cannot withdraw without leave of the Court for cause shown. Cooley Const. Limitations, 335. But it is not essential in North Carolina, where the appellate Court does not review the facts, that the client, though indicted for a capital felony, should be present in this Court, or should be in actual or constructive custody, so as to communicate with his counsel

after the trial in the Court below, including judgment, exceptions and appeal, is ended. In *State* v. *Overton*, 77 N. C., 486, Justice READE, for the Court, says: "The Constitution, provides that a defendant in a criminal action shall be informed of the accusation against him, and shall have the right to confront the accusers with other testimony, and shall not be convicted except by the unanimous verdict of a jury of good and lawful men in open Court, as heretofore used. That is *his trial*. This, of course, implies that he shall have the right to be present. If he complains of any error in *his trial*, the record of the trial is transmitted to this Court. * * * It has never been understood, nor has it been the practice, that the defendant shall be present in this Court, nor is he ever 'convicted' here." See also *State* v. *Leak*, 90 N. C., 656.

This Court has repeatedly held that nothing should be done prejudicial to the rights of a person on his trial for a capital felony unless he is actually present; while, on trial for misdemeanors, it is sufficient if the defendant assents through counsel when any order is made or any step taken affecting his rights. *State* v. *Weaver*, 13 Ired., 203; *State* v. *Jenkins*, 84 N. C., 812; *State* v. *Epps*, 76 N. C., 55; *State* v. *Paylor*, 89 N. C., 539; *State* v. *Sheets, ibid.*, 543. But the distinction is clearly drawn in *State* v. *Overton, supra,* between the trial below, at which the defendant has the right to be present and confront his accusers, by virtue of the declaration of rights, in all criminal prosecutions (but may waive that right except in trials for capital felonies, and consent that his counsel shall represent him), and the hearing in appellate Court, where it is not essential in any case that the accused should be actually present, or that counsel who represent him should know that he has not absconded. One on trial for a capital felony must confront his accusers in person at every stage of his progress, and the law does not permit him to waive his right or delegate to another

the power to represent him in the examination of an issue involving his life, or certainly not by implication. But now that it is settled that even one convicted of a capital felony may be represented by counsel (and not in person) when this Court hears argument upon his exceptions, and that this Court may affirm the judgment of the Court below and direct the clerk to notify the Governor so that a death-warrant may issue in the absence both of client and counsel, it is difficult to discover any principle of con-stitutional, common or statute law that gives a defendant who is in hiding and in contempt the right to insist upon setting aside and annulling a judgment of this Court because he was "in the woods" instead of in the prison, and could not, therefore, communicate by letter or telegram with counsel, engaged to represent him and protect his interests in this Court. It would have been absurd, if the appeals of Jacobs and Oxendine in this case had been heard together, decided in one opinion and disposed of by one decree affirming judgment as to both, to have after-wards held that any principle of law would compel the Court to execute the judgment as to Oxendine, who remained in jail, and grant a new hearing as to the defendant Jacobs because he was in the swamps of Robeson County and could not advise his learned counsel by letter what steps he ought to take in the management of his appeal here.

In *State* v. *Leak*, *supra*, the Court passed upon a motion of counsel for a defendant charged with a misdemeanor (forni-cation and adultery) to withdraw his appeal and the motion was allowed. The question whether the appellate Court should grant a motion made by counsel and not supported by affidavit or direct authority from one charged with a capital felony, to dismiss the appeal of the latter, did not arise in that case and has never been decided by this Court.

It seems, as already stated, that the Court of Appeals of Virginia not only directed, when notified of the escape of

an appellant, that his appeal should stand dismissed unless it should be made to appear that he was in custody before a certain day, but discharged immediately the order that the writ of error should act as a *supersedeas*. *Shearman* v. *Commissioners, supra*. We infer that *supersedeas* is used in the sense of stay of execution, and that the effect of discharging the *supersedeas* would be the same as a dismissal of an appeal in this Court since. the passage of the act of 1887. Abbot's Law Dict. (*supersedeas*), 523; *Williams* v. *Bruffy*, 102 U. S. Rep., 249; *Smith* v. *Telegraph Company*, 83 Ky., 271; *Hovey* v. *McDonald*, 109 U. S. Rep., 159. The Texas Court of Appeals declared constitutional an act which provided that, in case a defendant should escape from prison pending his appeal, the jurisdiction of the appellate Court should no longer attach and the appeal should be dismissed, and in discussing the subject declared that, in the absence of any statutory provision, an escape should be considered an abandonment of an appeal. *Brown* v. *State*, 5 Texas, 129; *Loyd* v. *State*, 19 Texas, 155. The case of *People* v. *Bedenger*, 55 Cal., 290, involved only a construction of an express provision of the constitution and a statute of the State of California, and the citation of 4 Blackstone, 355, which is a summary of the law in force in England prior to 1836, was not applicable in this country, because the provisions of the organic law in nearly all of the States secure the right of representation by counsel in all cases and at all stages of the prosecution.

If we concede that the right of the accused to be present, or in communication with his counsel, extends beyond the time when the *nisi prius* Court is actually engaged in the trial of the indictment preferred against him, it gives rise to many embarrassing questions. If the defendant has the right to confront his accusers or to be in such a position that he can direct or assist his counsel, after verdict and judgment below, while his appeal is pending, there is even greater

reason for his presence, at least by counsel acting under his advice, when many preliminary steps are taken by witnesses, prosecuting officers and grand juries. Yet this Court has denied the right of the accused to have a dying declaration excluded on the ground that he could not confront his accuser, and has admitted testimony as to an examination of a defendant's tracks, in his absence, in the face of a similar objection. *State* v. *Tilghman*, 11 Ired., 513; *State* v. *Morris*, 84 N. C., 759. This Court has condemned, in very severe terms, too, any attempt to compel grand juries to conduct their investigations in the presence of the public or the accused, even though the question before them may be whether the life of a citizen shall be placed in jeopardy by the finding of an indictment charging him with a capital felony. *State* v. *Branch*, 68 N. C., 186. If this Court had never considered any of these questions, it would be much more important to extend the right of the accused so that he could confront those who, by acts or declarations, make or prepare testimony to be used on the trial below, than to secure to him the privilege of advising counsel, learned in the law, as to questions about which the client is usually profoundly ignorant. But this Court, in the case of *State* v. *Kelly*, 97 N. C., 404, has held that where a defendant charged with a felony of lower grade (less than capital) is present when his trial begins in the Court below, and, being under bond for his appearance, is in constructive custody, but voluntarily absents himself or flees during the progress of the trial, he thereby impliedly waived his right to be present at all subsequent stages up to and including the rendition of the verdict. Surely, then, if an alleged criminal can, by implication, surrender his acknowledged constitutional right to meet his accusers in the forum where the facts are investigated, and where he is supposed, on account of his peculiar knowledge, to be able to aid his counsel, it will not infringe upon any important principle or subject him to peril from which

he should be protected, to concede that a higher Court, having only cognizance of questions of law that may be as thoroughly discussed in his absence as in his presence, may proceed to hear and determine issues arising out of his appeal, and enter its judgment, whether the defendant be charged with a misdemeanor, a capital felony, or one of lower grade, and whether he be, at the time of the hearing, under bond or recognizance for his appearance, in prison, or in the woods.

The motion of the counsel for the defendant is not allowed. Let this opinion be certified, to the end that the judgment of the Court may be executed as provided by law.

Motion refused.