759 So.2d 668 (2000)
Jerry GRIFFIS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC92160.
Supreme Court of Florida.
May 18, 2000.
*669 Nancy A. Daniels, Public Defender, and Paula S. Saunders, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Trina Kramer, Assistant Attorney General, Tallahassee, Florida, for Respondent.
SHAW, J.
We have for review Griffis v. State, 703 So.2d 522 (Fla. 1st DCA 1997), wherein the district court certified the following question:
Should the holding in State v. Gurican, 576 So.2d 709 (Fla.1991), be re-evaluated in light of Ortega-Rodriguez v. United States, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993)?
Griffis, 703 So.2d at 523. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and quash Griffis.
Griffis was charged in 1989 with committing multiple counts of sexual battery and lascivious assault on a five-year old male in 1988. Griffis absconded in 1990 following jury selection and was tried in absentia, and the jury found him guilty as charged. He subsequently was arrested in Virginia in 1996 and was returned to Florida. He was adjudicated guilty on June 5, 1996, and was sentenced to concurrent life terms with twenty-five year minimum mandatory sentences. The district court dismissed his appeal on December 30, 1997, pursuant to State v. Gurican, 576 So.2d 709 (Fla. 1991), wherein this Court held that "[the] appellate courts of this state shall dismiss the appeal of a convicted defendant not yet sentenced who flees the jurisdiction before filing a notice of appeal." Id. at 712.
The State contends that Gurican was correctly decided and that the present district court decision should be approved. The State's position, while attractive at first blush, is contrary to United States Supreme Court precedent.
*670 The defendant in Gurican absconded after the jury returned its verdict but before the court adjudicated her guilty. She voluntarily returned to the jurisdiction four years later, and the court adjudicated her guilty and sentenced her. She subsequently filed an appeal. The district court denied the State's motion to dismiss the appeal, and this Court quashed that decision, ruling as follows:
[W]here the convicted defendant escapes and fails to appear for sentencing, we advise trial courts to proceed in absentia and render their final judgments adjudicating the defendant guilty. Thus, the thirty-day period for filing an appeal will commence running unless it is tolled until the court disposes of any authorized and timely post-trial motion.... If the defendant fails to return and timely file an appeal of the conviction, the appellate court shall dismiss any later appeal unless the defendant can establish that the escape or failure to appear was legally justified.
Gurican, 576 So.2d at 712. Thus, under the analysis in Gurican, the line of demarcation governing appellate dismissal is whether the trial has begun, for if a defendant absconds after that point, the process is automatic: The court will proceed with the trial in absentia and render judgment, and the thirty day appeal period will commence.
In the federal system, on the other hand, the traditional line of demarcation governing appellate dismissal is more logical: It is not whether the trial has begun, but whether the appellate process has begun. The United States Supreme Court in Ortega-Rodriguez v. United States, 507 U.S. 234, 240, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), addressed the issue posed in Gurican and reached a contrary result. The Court in Ortega-Rodriguez noted preliminarily that it is well-settled in the federal system that when a defendant absconds after the appellate process has begun the appellate court may dismiss the appeal. This long-standing rule is based on several common-sense considerations: enforceability, efficiency, unentitlement, and deterrence.[1]
Where the defendant absconds and returns before entering the appellate process, on the other hand, the above considerations are attenuated:
[T]he justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response. These justifications are necessarily attenuated when applied to a case in which both flight and recapture occur while the case is pending before the [trial] court, so that a defendant's fugitive status at no time coincides with his appeal.

Ortega-Rodriguez, 507 U.S. at 244, 113 S.Ct. 1199 (footnote omitted) (emphasis added). Specifically, the above rationales of enforceability, efficiency, and unentitlement are not dispositive.[2] The deterrence *671 rationale, too, is inapplicable, for the trial court is equipped with a variety of sanctions that will deter this conduct.[3]
The Court in Ortega-Rodriguez concluded that, absent some detrimental connection between the defendant's fugitive status and the appellate process, dismissal of an appeal is generally improper where a defendant absconds and returns prior to filing the appeal:
Accordingly, we conclude that while dismissal of an appeal pending while the defendant is a fugitive may serve substantial interests, the same interests do not support a rule of dismissal for all appeals filed by former fugitives, returned to custody before invocation of the appellate system. Absent some connection between a defendant's fugitive status and his appeal as provided when a defendant is at large during "the ongoing appellate process," the justifications advanced for dismissal of fugitives' pending appeals generally will not apply.
Id. at 249, 113 S.Ct. 1199 (citation omitted).[4] The offensive conduct is best sanctioned by the trial court, not the appellate court.[5] The Court remanded the case to the lower appellate court to determine whether there was a sufficiently detrimental nexus between Ortega-Rodriguez's fugitive status and his appeal to warrant appellate dismissal.
The question posed in the present case is whether this Court should recede from *672 Gurican in light of Ortega-Rodriguez. We answer in the affirmative for several reasons. First, the Florida Constitution, unlike its federal counterpart, contains an express right of appeal,[6] and logic dictates that this state constitutional right should receive at least the same level of protection as the federal statutory right.[7] Second, Ortega-Rodriguez is not inconsistent with our established rules of procedure in Florida. And finally, as explained below, Ortega-Rodriguez comports with the statutory scheme in Florida.
In the present case, the fact that Griffis absconded during trial several years earlier is insufficient under Ortega-Rodriguez to warrant automatic dismissal of his appeal. Griffis absconded and returned prior to filing his notice of appeal, and the offense thus was committed while he still was within the jurisdiction of the trial court, not the appellate court. Florida's trial courts have at their disposal a variety of sanctions with which to punish this affront to their authority. A defendant can be charged with and prosecuted for (where appropriate) escape[8] or failure to appear,[9] or the court can hold the defendant in contempt[10] or assess status points under the sentencing guidelines[11] or the Criminal Punishment Code.[12] The trial court in the present case thus had before it a number of options.
The district court, on the other hand, pursuant to the reasoning of Ortega-Rodriguez, should have dismissed Griffis's appeal only if there had been an affront to its authorityi.e., only if there was a sufficiently detrimental connection between Griffis' fugitive status and the appellate process. For instance, if it had been shown by the State that during his fugitivity crucial evidence grew stale or key witnesses became unavailable, then the State's burden at retrial (i.e., its obligation to establish guilt beyond a reasonable doubt) would have been unduly prejudiced and the district court could have dismissed the appeal. Instead of making this determination, the district court felt compelled under Gurican to summarily dismiss the appeal.
In sum, it is well settled that when a defendant absconds after filing an appeal, the appellate court has the authority to dismiss the appeal.[13] However, where the defendant absconds and returns before filing an appeal, trial courts are better suited to address the matter. The latter misconduct is committed within the jurisdiction of the trial court, and the Florida Legislature has armed that court with a series of statutory sanctions (which does not include appellate dismissal). The court can fine-tune a response to fit the circumstances of each case. The district court, on the other hand, has only a single big gun in its arsenali.e., appellate dismissal and this court-made blunderbuss should be fired only when the defendant's misconduct has unduly prejudiced the State.[14]
*673 We cannot fault the district court for following our holding in Gurican, but we now recede from that decision in light of Ortega-Rodriguez. We answer the certified question in the affirmative, quash the district court decision below, and remand this case so the district court can decide if Griffis' fugitivity has unduly prejudiced the State.
It is so ordered.
HARDING, C.J., and WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] The United States Supreme Court explained: (1) There is no point in continuing with the appeal if the appellate judgment will be unenforceable, i.e., if the defendant will not be present to submit to the judgment; (2) the dismissal rule promotes an orderly, efficient appellate process by allowing the court to dispose of the matter promptly; (3) a defendant who flouts the appellate process is not entitled to pursue an appeal; and (4) the dismissal rule deters escapes. See Ortega-Rodriguez, 507 U.S. at 240-42, 113 S.Ct. 1199.
[2] See Ortega-Rodriguez, 507 U.S. at 244, 113 S.Ct. 1199 ("A defendant returned to custody before he invokes the appellate process presents no risk of unenforceability; he is within control of the appellate court throughout the period of appeal and issuance of judgment."); id. at 245, 113 S.Ct. 1199 (noting that the court that is disrupted by a defendant's fugitivity during trial is the trial court, not the appellate court); id. (explaining that a defendant's fugitivity during trial flouts the dignity and authority of the trial court and thus disentitles the defendant to call upon the resources of that court, not the appellate court).
[3] The Court explained why the deterrence rationale is inapplicable when the defendant absconds before entering the appellate process:

Finally, [the] deterrence rationale offers little support for the [dismissal] rule. Once jurisdiction has vested in the appellate court ... then any deterrent to escape must flow from the appellate consequences, and dismissal may be an appropriate sanction by which to deter. Until that time, however, the [trial] court is quite capable of defending its own jurisdiction. While a case is pending before the [trial] court, flight can be deterred with the threat of a wide range of penalties available to the [trial] court judge.
Moreover, should this deterrent prove ineffective, and a defendant flee while his case is before a [trial] court, the [trial] court is well situated to impose an appropriate punishment. While an appellate court has access only to the blunderbuss of dismissal, the [trial] court can tailor a more finely calibrated response. Most obviously, because flight is a separate offense punishable under the [federal statutes], the [trial] court can impose a separate sentence that adequately vindicates the public interest in deterring escape and safeguards the dignity of the court....
Indeed ... punishment by appellate dismissal introduces an element of arbitrariness and irrationality into sentencing for escape. Use of the dismissal sanction as, in practical effect, a second punishment for a defendant's flight is almost certain to produce the kind of disparity in sentencing that the ... Sentencing Guidelines were intended to eliminate.
Ortega-Rodriguez, 507 U.S. at 247-48, 113 S.Ct. 1199 (citations and footnotes omitted).
[4] The Court noted that at times the connection between the defendant's absconding and the appellate process may be sufficiently detrimental to warrant dismissal of the appeal:

We do not ignore the possibility that some actions by a defendant, though they occur while his case is before the [trial] court, might have an impact on the appellate process sufficient to warrant an appellate sanction. For that reason, we do not hold that a court of appeals is entirely without authority to dismiss an appeal because of fugitive status predating the appeal. For example ... a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal. We recognize that this problem might, in some instances, make dismissal an appropriate response.
Ortega-Rodriguez, 507 U.S. at 249, 113 S.Ct. 1199 (citations omitted).
[5] The Court explained as follows:

In short, when a defendant's flight and recapture occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal. In such cases, fugitivity while a case is pending before a [trial] court, like other contempts of court, is best sanctioned by the [trial] court itself.
Id. at 251, 113 S.Ct. 1199 (emphasis added).
[6] See Art. V, § 4(b)(1), Fla. Const. ("District courts of appeal shall have jurisdiction to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts...."); Amendments to the Rules of Appellate Procedure, 685 So.2d 773, 774 (Fla. 1996) ("[W]e construe the language of article V, section 4(b) as a constitutional protection of the right to appeal.").
[7] See generally Traylor v. State, 596 So.2d 957, 962 (Fla.1992) ("In any given state, the [federal law] thus represents the floor for basic freedoms; the state constitution, the ceiling.").
[8] See § 944.40, Fla. Stat. (1997).
[9] See § 843.15, Fla. Stat. (1997).
[10] See §§ 38.22, 900.04 Fla. Stat. (1997).
[11] See § 921.0011, Fla. Stat. (1997).
[12] See § 921.0021, Fla. Stat. (1997).
[13] See, e.g., Bretti v. Wainwright, 225 So.2d 516 (Fla.1969), language expunged, 255 So.2d 266 (Fla.1971).
[14] Appellate dismissal should be imposed rarely, for an element of arbitrariness is injected into the criminal justice system whenever the appellate safety net is withdrawn. See Ortega-Rodriguez, 507 U.S. at 248, 113 S.Ct. 1199 ("Indeed ... punishment by appellate dismissal introduces an element of arbitrariness and irrationality into sentencing for escape."); see also Estelle v. Dorrough, 420 U.S. 534, 544, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (Stewart, J., dissenting) ("If an escaped felon has been convicted in violation of law, the loss of his right to appeal results in his serving a sentence that under law was erroneously imposed. If, on the other hand, his trial was free of reversible error, the loss of his right to appeal results in no punishment at all. And those whose appeals would have been reversed if their appeals had not been dismissed serve totally disparate sentences, dependent not upon the circumstances of their escape, but upon whatever sentences may have been meted out under their invalid convictions.").