STATE of Minnesota, Appellant,

v.

John Mark HENTGES, Respondent.

No. A12–0794.

Supreme Court of Minnesota.

April 2, 2014.

Lori Swanson, Attorney General, Saint Paul, Minnesota; Brent Christian, Le Sueur County Attorney, Le Center, Minnesota; and Thomas R. Ragatz, Special Assistant Le Sueur County Attorney, Saint Paul, Minnesota, for appellant.

Mark D. Nyvold, Special Assistant State Public Defender, Fridley, Minnesota, for respondent.

## OPINION

STRAS, Justice.

Respondent John Mark Hentges filed an appeal of his conviction of felony failure to pay child support with the court of appeals. After filing his notice of appeal, Hentges failed to appear for a hearing on an alleged probation violation, and the district court issued a bench warrant for his arrest. The State moved to dismiss Hentges's appeal under the fugitive-dismissal rule, which permits an appellate court to dismiss a criminal appeal when the party who brings the appeal is a fugitive. The court of appeals declined to dismiss the appeal. We reverse the decision of the court of appeals and direct it to dismiss Hentges's appeal if he does not surrender to law-enforcement officials within 10 days after the date of filing of this opinion.

## I.

In July 2009, the State charged Hentges by criminal complaint with felony failure to pay child support based on over $56,000 in past-due child support. *See* Minn.Stat. § 609.375, subd.2a (2012). Following Hentges's arrest, which occurred nearly 1 year after he was charged, the State served Hentges with the criminal complaint. After a trial in February and March 2011, the jury found Hentges guilty of felony failure to pay child support.

The district court scheduled the sentencing hearing for April 5, 2011. Hentges failed to attend the hearing, and the district court issued a bench warrant for his arrest. Law-enforcement officials arrested Hentges approximately 8 months later, in December 2011, and Hentges was placed in county jail. The district court scheduled a second sentencing hearing for January 17, 2012. Despite being in jail, Hentges refused to attend the hearing. The district court made one final attempt to schedule the sentencing hearing on February 7, 2012, and announced that the court would impose a sentence on that date regardless of whether Hentges attended the hearing. Hentges again refused to attend the hearing despite being in jail, and the court convicted him, stayed execution of a 366–day prison sentence, imposed 5 years of supervised probation, and ordered Hentges to serve a portion of the probation in county jail.

Approximately 10 days after Hentges's release from jail in April 2012, the district court issued a warrant for Hentges's arrest based on a violation report prepared by Hentges's probation officer. According to the violation report, Hentges violated the terms of his probation by failing to sign certain forms and to provide a DNA sample. Several weeks later, Hentges filed a timely notice of appeal from his conviction.[1]

Approximately 2 months later, law-enforcement officials arrested Hentges on the outstanding warrant. On the day of the arrest, Hentges's probation officer supplemented her earlier violation report with allegations that Hentges had violated the terms of his probation by contacting his ex-wife and children. The court scheduled a hearing on the alleged probation violations for August 21, 2012. Yet again, Hentges missed the hearing, and the district court issued yet another bench warrant for his arrest—a warrant that remains active to this day.

Although Hentges has refused to attend any hearings in the district court after his trial, he has actively pursued his appeal. During the last 3 months of 2012, the State and Hentges filed their respective briefs in the court of appeals, including a pro se supplemental brief submitted by Hentges.

In the court of appeals, the State moved to dismiss Hentges's appeal on the ground that he is a fugitive who has forfeited his right to an appeal. The court of appeals denied the motion because Minnesota has not yet adopted the fugitive-dismissal rule. *State v. Hentges*, No. A12–0794, Order at 2 (Minn.App. filed Jan., 2013). The State petitioned for review of the court of ap-

peals' decision. While the State's petition was pending before us, the court of appeals held oral argument on the merits of Hentges's appeal. Once we granted the State's petition for further review, however, the court of appeals stayed its proceedings pending our decision in this case.

## II.

The court of appeals correctly observed that we have never addressed, much less adopted, the fugitive-dismissal rule. We therefore granted review to determine whether to adopt the fugitive-dismissal rule, and if so, whether the rule applies to the circumstances presented by this case.

### A.

The fugitive-dismissal rule, also known as the fugitive-disentitlement doctrine, has deep roots in American law. According to the Supreme Court of the United States, "[i]t has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega–Rodriguez v. United States*, 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

The earliest reported American case applying the fugitive-dismissal rule dates back to 1850, when the Maine Supreme Court "declined to hear the case" of a person who had escaped from custody while the appeal was pending. *Anonymous*, 31 Me. 592, 592 (1850). Similarly, in an 1858 decision involving a person who had escaped from custody while his appeal was pending, the Supreme Court of Appeals of Virginia held that it would dismiss the appeal unless the escapee was in custo-

---

1. Hentges had previously filed a notice of appeal in March 2011, before his first scheduled sentencing hearing. The court of appeals dismissed that appeal on April 12, 2011—a week after Hentges failed to appear at the sentencing hearing—based on its conclusions that Hentges had appealed from a nonappealable order and that his failure to attend the sentencing hearing warranted the dismissal of his appeal.

dy within roughly a year. *Sherman v. Commonwealth*, 55 Va. (14 Gratt.) 677, 678 (1858); *see also Leftwich v. Commonwealth*, 61 Va. (20 Gratt.) 716, 723 (1870) (citing *Sherman* with approval). Approximately 10 years later, the Supreme Judicial Court of Massachusetts, relying in part on English case law, dismissed the appeal of a fugitive in *Commonwealth v. Andrews*, 97 Mass. 543, 544 (1867) (citing *The Queen v. Caudwell*, (1851) 117 Eng. Rep. 1374 (Q.B.)).

The fugitive-dismissal rule became part of federal law in 1876, when the Supreme Court decided *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876). In *Smith*, the Court ordered the case to be "left off the docket" if the appellant did not "submit himself to the jurisdiction of the court

below on or before the first day of our next term." *Id.* at 98. The Court explained:

> If we affirm the judgment, [the fugitive] is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case.

*Id.* at 97.[2]

By the end of the 19th century, the Supreme Court and courts in 19 states or territories had adopted the fugitive-dismissal rule, typically by giving a fugitive some period in which to surrender before dismissing the appeal.[3] Today, some form of the fugitive-dismissal rule is the law in

**2.** Despite the Supreme Court's language in *Smith* about mootness, a criminal appeal involving a fugitive is not technically moot. Although a judgment affirming a fugitive's conviction or ordering a new trial might be unenforceable, a decision vacating a fugitive's conviction would afford effective relief, and a case is not moot when effective relief to a party is possible. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, —— U.S. ——, ——, 132 S.Ct. 2277, 2287, 183 L.Ed.2d 281 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (citation omitted) (internal quotation marks omitted)); *see also Hous. & Redevelopment Auth. ex rel. City of Richfield v. Walser Auto Sales, Inc.*, 641 N.W.2d 885, 888 (Minn.2002) ("An issue is not moot if a party could be afforded effectual relief.").

**3.** *Smith v. United States*, 94 U.S. 97, 98, 24 L.Ed. 32 (1876) (giving a fugitive until the start of the next term to surrender or face dismissal); *Warwick v. State*, 73 Ala. 486, 487 (1883) (providing a fugitive with approximately 1 year to surrender or face dismissal); *People v. Redinger*, 55 Cal. 290, 299 (1880) (stating that a fugitive's appeal would be dismissed in roughly 1 year if he did not surrender to the authorities); *Woodson v. State*, 19 Fla. 549, 551 (1882) (granting a fugitive until the start of the next term to surrender or face dismissal); *Gentry v. State*, 91 Ga. 669, 17

S.E. 956, 957, 959 (1893) (dismissing a fugitive's appeal after having given him roughly 4 months to surrender); *McGowan v. People*, 104 Ill. 100, 101 (1882) (giving fugitives until the start of the next term to surrender or face dismissal); *Sargent v. State*, 96 Ind. 63, 66–67 (1884) (dismissing a fugitive's appeal immediately); *City of Holton v. Mannix*, 6 Kan.App. 105, 49 P. 679, 680 (App.1897) (giving a fugitive 60 days to surrender or face dismissal); *Wilson v. Commonwealth*, 73 Ky. (10 Bush) 526, 527 (1874) (dismissing a fugitive's appeal immediately); *Anonymous*, 31 Me. 592, 592 (1850) (declining to hear the case "until the defendant should be again in custody"); *Commonwealth v. Andrews*, 97 Mass. 543 (1867) (dismissing a fugitive's appeal immediately); *State v. Carter*, 98 Mo. 431, 11 S.W. 979, 980 (1889) (dismissing a fugitive's appeal after having previously ordered him to surrender before the start of the term or face dismissal); *State v. Ackerson*, 25 N.J.L. 209, 210–11 (N.J.Sup.Ct.1855) (denying an appeal seeking to set aside a bail order because the appellant was a fugitive); *Territory v. Trinkhouse*, 4 N.M. 300, 13 P. 341 (1887) (dismissing a fugitive's appeal immediately), *overruled by Mascarenas v. State*, 94 N.M. 506, 612 P.2d 1317 (1980); *People v. Genet*, 59 N.Y. 80, 82 (1874) ("[A]n escaped prisoner cannot take any action before the court."); *State v. Jacobs*, 107 N.C. 772, 11 S.E. 962, 962 (1890) (adopting the fugitive-dismissal rule, but noting that

every federal court and in 43 out of 50 states. Three states—Oregon, Pennsylvania, and Texas—provide for the dismissal of a fugitive's appeal in their rules of appellate procedure.[4] Courts in 40 other states have adopted or endorsed the fugitive-dismissal rule in judicial decisions.[5]

Of the remaining states, the status of the fugitive-dismissal rule is open in

Minnesota and 4 others: Hawaii, Michigan, South Dakota, and Vermont. The rule has been rejected in only 2 states, Louisiana and New Mexico, for reasons peculiar to each state. In Louisiana, the Legislature eliminated language in a statute that required the dismissal of a fugitive's appeal, which caused the Louisiana Supreme Court to conclude that the Legislature had abrogated the rule through a

the application of the rule is discretionary); *State v. Murrell*, 33 S.C. 83, 11 S.E. 682, 683 (1890) (deciding the appeal of a former fugitive who was then in custody and discussing the fugitive-dismissal rule); *Moore v. State*, 44 Tex. 595, 596 (1876) (stating the rule that a fugitive's appeal will be dismissed if he has not surrendered "after a reasonable delay"); *Sherman v. Commonwealth*, 55 Va. (14 Gratt.) 677, 678 (1858) (giving a fugitive defendant approximately 1 year to surrender or face dismissal); *State v. Sites*, 20 W.Va. 13, 17–18 (1882) (stating that the appeal would be dismissed if the fugitive did not surrender within approximately 1 year).

4. Or. R.App. P. 8.05(3) ("If a defendant in a criminal case ... on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant is not in custody or under supervision at the time the motion is decided by the court, the court may dismiss the appeal or judicial review."); Pa. R.App. P.1972(a)(6) ("[A]ny party may move ... to continue generally or to quash because the appellant is a fugitive."); Tex.R.App. P. 42.4 ("The appellate court must dismiss an appeal on the State's motion, supported by affidavit, showing that the appellant has escaped from custody pending the appeal and that to the affiant's knowledge, the appellant has not, within ten days after escaping, voluntarily returned to lawful custody within the state.").

5. *See Young v. State*, 518 So.2d 822, 824 (Ala. Crim.App.1987); *White v. State*, 514 P.2d 814, 816 n. 8 (Alaska 1973); *Alday v. State*, 15 Ariz. 334, 138 P. 1043, 1043 (1914); *Bargo v. State*, 364 Ark. 197, 217 S.W.3d 825, 829 (2005); *People v. Redinger*, 55 Cal. 290, 299 (1880); *People v. Anderson*, 39 Colo.App. 497, 566 P.2d 1369, 1369 (1977); *State v. Leslie*, 166 Conn. 393, 349 A.2d 843, 844 (1974) (per curiam); *Redden v. State*, 418 A.2d 996, 997

(Del.1980) (per curiam); *Griffis v. State*, 759 So.2d 668, 672 (Fla.2000); *Gravitt v. State*, 221 Ga. 812, 147 S.E.2d 447, 448 (1966); *State v. Larrea*, 130 Idaho 290, 939 P.2d 866, 867–68 (App.1997); *People v. Partee*, 125 Ill.2d 24, 125 Ill.Dec. 302, 530 N.E.2d 460, 466 (1988); *Kirkman v. State*, 232 Ind. 563, 114 N.E.2d 878, 878 (1953); *State v. Dyer*, 551 N.W.2d 320, 321 (Iowa 1996) (per curiam); *State v. Raiburn*, 289 Kan. 319, 212 P.3d 1029, 1038 (2009); *Crum v. Commonwealth*, 232 Ky. 331, 23 S.W.2d 550, 550 (1930); *Anonymous*, 31 Me. 592, 592 (1850); *State of Md. Deposit Ins. Fund Corp. v. Billman*, 321 Md. 3, 580 A.2d 1044, 1046 (1990); *Commonwealth v. Andrews*, 97 Mass. 543, 544 (1867); *Derrick v. State*, 406 So.2d 48, 48 (Miss.1981); *State v. Crump*, 128 S.W.3d 642, 642–43 (Mo.Ct.App.2004); *State v. Dempsey*, 26 Mont. 504, 68 P. 1114, 1114–15 (1902); *State v. Goree*, 11 Neb.App. 685, 659 N.W.2d 344, 349 (2003); *Arvey v. State*, 94 Nev. 566, 583 P.2d 1086, 1087 (1978) (per curiam); *State v. Patten*, 134 N.H. 319, 591 A.2d 1329, 1330 (1991); *State v. Rogers*, 90 N.J. 187, 447 A.2d 537, 539 (1982); *People v. Genet*, 59 N.Y. 80, 82 (1874); *State v. Jacobs*, 107 N.C. 772, 11 S.E. 962, 964 (1890); *State v. Bell*, 608 N.W.2d 232, 235–36 (N.D.2000); *Stevens v. State*, 26 Ohio App. 53, 159 N.E. 834, 835 (1927); *Brinlee v. State*, 513 P.2d 343, 344 (Okla.Crim.App.1973); *State v. Eaton*, 344 A.2d 377 (R.I.1975); *Jordan v. State*, 276 S.C. 168, 276 S.E.2d 781, 782 (1981) (per curiam); *Bradford v. State*, 184 Tenn. 694, 202 S.W.2d 647, 648–49 (1947); *State v. Tuttle*, 713 P.2d 703, 704 (Utah 1985); *Sherman v. Commonwealth*, 55 Va. (14 Gratt.) 677, 678 (1858); *State v. Nason*, 20 Wash.App. 433, 579 P.2d 366 (1978); *State v. Spry*, 126 W.Va. 781, 30 S.E.2d 88, 89 (1944); *State v. Braun*, 185 Wis.2d 152, 516 N.W.2d 740, 746 (1994); *Harris v. State*, 34 Wyo. 175, 242 P. 411, 412 (1926).

statutory amendment. *State v. Falcone,* 383 So.2d 1243, 1246–47 (La.1980). In New Mexico, the New Mexico Supreme Court held that adoption of the fugitive-dismissal rule would be inconsistent with the New Mexico Constitution, which explicitly "provides that an aggrieved party shall have an absolute right to one appeal." *Mascarenas v. State,* 94 N.M. 506, 612 P.2d 1317, 1318 (1980). *But see State v. Brown,* 116 N.M. 705, 866 P.2d 1172, 1175 (App.1993) (dismissing an appeal notwithstanding *Mascarenas* "because Defendant's fugitive status caused the administrative purging of the record of his trial, thus preventing the orderly disposition of his case").

The widespread adoption of the fugitive-dismissal rule is attributable, in part, to its lengthy historical pedigree. *Cf. People v. Partee,* 125 Ill.2d 24, 125 Ill.Dec. 302, 530 N.E.2d 460, 466 (1988) ("We adhere to the century-old rule that an appellate court has the discretionary power to refuse to hear a fugitive's appeal unless and until the fugitive returns to the jurisdiction."). In addition to considering the rule's lineage, courts rely on one or more of the following four rationales in adopting the rule: (1)the importance of an enforceable judgment; (2)the existence of waiver or abandonment based on flight; (3)the advancement of the efficient operation of courts by deterring escape; and (4)the avoidance of prejudice to the government. *See, e.g., Ortega–Rodriguez,* 507 U.S. at 239–42, 113 S.Ct. 1199 (discussing the rationales for the fugitive-dismissal rule); *United States v. Awadalla,* 357 F.3d 243, 245 (2d Cir.2004) (same).

The first rationale, unenforceability, rests on a concern that, if an appellate court rules against a fugitive, the court's judgment will be unenforceable for as long as the fugitive is at large. *See, e.g., Smith,* 94 U.S. at 97 ("If we affirm the judgment, [the fugitive] is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest."). The unenforceability rationale favors reinstating the appeals of former fugitives who are in custody at the time of appellate review because any judgment will presumably be enforceable once a fugitive is in custody. *See Ortega–Rodriguez,* 507 U.S. at 244, 113 S.Ct. 1199; *State v. Brabham,* 301 Conn. 376, 21 A.3d 800, 805 (2011). In those cases in which a fugitive is not in custody at the time of review, however, dismissal of the appeal diminishes the likelihood that the court will render an unenforceable judgment.

The second rationale, waiver or abandonment, rests on the notion that those who defy court orders and flout the judicial system forfeit the right to invoke the authority of the courts. As the Supreme Court has explained:

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

*Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam). Some courts have referred to the second rationale as "disentitlement"—arguably employing dismissal as a punishment for flight—but the modern trend in the cases is to view flight as a form of waiver or abandonment. *Compare, e.g., Ortega–Rodriguez,* 507 U.S. at 240, 113 S.Ct. 1199 (construing flight "as tantamount to waiver or abandonment"), *with*

*Allen v. Georgia,* 166 U.S. 138, 141, 17 S.Ct. 525, 41 L.Ed. 949 (1897) (characterizing dismissal as a "light punishment" for escape). The modern approach is persuasive because we have long held that a person can waive or abandon a known right through conduct or inaction, so long as the waiver is voluntary. *See Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 181–82, 84 N.W.2d 593, 603 (1957). Thus, courts that adhere to the waiver or abandonment rationale reason that a person who refuses to submit to the authority of the court by becoming a fugitive has also waived or abandoned through his or her conduct the right to invoke the authority of the court. *See Ortega–Rodriguez,* 507 U.S. at 240, 113 S.Ct. 1199 (stating that a fugitive cannot " 'call upon the resources of the Court for determination of his claims' " (quoting *Molinaro,* 396 U.S. at 366, 90 S.Ct. 498)).

The third rationale, based principally on deterrence, recognizes that, all else being equal, people are less likely to evade custody if the consequences of flight include the loss of appellate rights. *See Estelle v. Dorrough,* 420 U.S. 534, 535, 537, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam) (noting that a Texas rule mandating the dismissal of a fugitive's appeal after 10 days of flight "discourage[d] the felony of escape and encourage[d] voluntary surrenders"). In multi-defendant cases, deterring escape has the added advantage of promoting judicial efficiency because it increases the likelihood that an appellate court will be able to consider each of the appeals together. *See Ortega–Rodriguez,* 507 U.S. at 250, 113 S.Ct. 1199 (discussing the effect of flight in a multiple-defendant case).

■ The fourth rationale acknowledges that extensive delays caused by flight can burden appellate review and prejudice the government's ability to retry a case. In assessing prejudice, courts generally consider, among other things, whether material documents are available, *see Bellows v. State,* 110 Nev. 289, 871 P.2d 340, 342–43 (1994) (per curiam), whether key witnesses can be located, *see United States v. Morgan,* 254 F.3d 424, 427 (2d Cir.2001), and whether meaningful appellate review is still feasible, *see State v. Verikokides,* 925 P.2d 1255, 1256 (Utah 1996). Courts do so because, as the Supreme Court has observed, "a long escape … may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *See Ortega–Rodriguez,* 507 U.S. at 249, 113 S.Ct. 1199.

■ The State's motion to dismiss in this case requires us to consider whether to adopt the fugitive-dismissal rule in Minnesota—a question of first impression that is subject to de novo review. *See State v. Burrell,* 837 N.W.2d 459, 462 (Minn.2013). The rule's extensive history and near-universal adoption by other courts weigh strongly in favor of its adoption in Minnesota. In fact, the rule has become so integrated into American law that some courts have described it as a common-law rule. *See Brabham,* 21 A.3d at 803; *State v. Raiburn,* 289 Kan. 319, 212 P.3d 1029, 1030 (2009). Moreover, the first and second rationales—unenforceability and waiver or abandonment—are consistent with general principles of law that we have applied elsewhere. Indeed, the Supreme Court has emphasized those two rationales in explaining its own adoption of the rule. *See Ortega–Rodriguez,* 507 U.S. at 240, 113 S.Ct. 1199. For these reasons, we adopt the fugitive-dismissal rule and hold that appellate courts have the discretion to dismiss an appeal brought by a fugitive.

### B.

We now turn to the application of the fugitive-dismissal rule in this case. ·Hentges argues that we should decline to apply the rule to him for three reasons: (1)he is not a fugitive; (2) the State waited too long to move for dismissal; and (3)it would violate his due-process rights because he lacked notice that a failure to appear could result in the dismissal of his appeal. We reject each of Hentges's arguments.

■ First, Hentges argues that he is not a fugitive, even though he failed to attend a mandatory hearing on alleged probation violations and has refused to surrender to the authorities following the issuance of a bench warrant for his arrest. Other courts have defined the term "fugitive" for purposes of the fugitive-dismissal rule as " 'a person who, having committed a crime, flees from [the] jurisdiction of [the] court where [the] crime was committed or departs from his usual place of abode and conceals himself within the district.' " *Empire Blue Cross & Blue Shield v. Finkelstein,* 111 F.3d 278, 281 (2d Cir. 1997) (alterations in original) (quoting *Black's Law Dictionary* 604 (5th ed.1979)). "Fugitive" status can be acquired by, among other actions, failing to return to the jurisdiction after having committed a crime, *see Matsumoto v. Matsumoto,* 171 N.J. 110, 792 A.2d 1222, 1228 (2002); failing to appear in court on a probation violation, *see Raiburn,* 212 P.3d at 1036; and refusing to surrender on a bench warrant, *see State v. Smith,* 312 Or. 561, 822 P.2d 1193, 1193 (1992) (per curiam).

Although Hentges has repeatedly defied court orders and failed to appear in court on at least four occasions, his failure to report to court for a mandatory hearing on alleged probation violations and his refusal to surrender after the issuance of a bench warrant for his arrest provide an adequate basis for deeming him a fugitive. *See*

*Smith,* 822 P.2d at 1193 (dismissing the appeal of a person who failed to report to probation and refused to surrender on a bench warrant); *Commonwealth v. Simon,* 391 Mass. 1010, 461 N.E.2d 758, 759 (1984) (dismissing the appeal of a person who was subject to an outstanding warrant for his failure to report to probation). Moreover, Hentges's fugitive status has a sufficient connection to this appeal: he became a fugitive by refusing to submit to the district court's authority in the underlying criminal action and he remains at large during the course of the appeal. *Cf. Awadalla,* 357 F.3d at 245 n. 1 (discussing the " 'connection between the defendant's [prior] fugitive status and his appeal.' " (alteration in original) (quoting *Ortega–Rodriguez,* 507 U.S. at 249, 113 S.Ct. 1199)); *Sasson v. Shenhar,* 276 Va. 611, 667 S.E.2d 555, 561 (2008) (imposing a nexus requirement). Accordingly, we conclude that Hentges is a fugitive and that his status as a fugitive grants an appellate court the discretionary authority to dismiss his appeal.

■ Second, Hentges argues that, even if he is a fugitive, we should decline to apply the fugitive-dismissal rule in this case because the State waited to seek dismissal until after the parties had submitted their briefs to the court of appeals. Hentges's argument is a variation on laches—an equitable doctrine .that prevents a party who has not been diligent in asserting a known right from recovering at the expense of another who has been prejudiced by the delay. *See Winters v. Kiffmeyer,* 650 N.W.2d 167, 169 (Minn.2002). We have never applied laches in a criminal case, and even if the doctrine were available here, the facts of this case do not merit equitable relief. *Cf. United States v. Milstein,* 401 F.3d 53, 63 (2d Cir.2005) ("We have found no case applying a laches defense in the criminal context.").

Hentges seeks relief based on the State's delay, but the lengthiest delays in this case have been caused, not by the State, but by Hentges, who has missed three sentencing hearings—resulting in a nearly 1–year delay—and a separate hearing on alleged probation violations. As we have stated, "he who seeks equity must do equity, and he who comes into equity must have clean hands." *Hruska v. Chandler Assocs.*, 372 N.W.2d 709, 715 (Minn.1985) (citation omitted) (internal quotation marks omitted). Therefore, as the source of the greatest delays in this case and as someone who continues to defy his legal obligations, Hentges appears before us with unclean hands. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 450 (Minn.App.2001) (noting that the defense of "unclean hands" is based on "withholding judicial assistance from a party guilty of *illegal* or unconscionable conduct" (emphasis added)). Accordingly, under these circumstances, we hold that the State's delay does not warrant the award of equitable relief to Hentges.

■ Third, Hentges argues that application of the fugitive-dismissal rule in this case—without advance notice that we would dismiss his appeal based on his failure to appear in court—would violate his procedural due-process rights. Although notice and a meaningful opportunity to be heard are the basic requirements of procedural due process, *see Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012), Hentges has not been deprived of either protection. Hentges has twice received notice of the potential applicability of the fugitive-dismissal rule: once when the court of appeals dismissed a prior appeal by Hentges based in part on the fugitive-dismissal rule, *State v. Hentges*, No. A11–0627, Order at 2 (Minn.App. filed Apr. 12, 2011), and again when the State filed its most recent motion to dismiss.

On the second occasion, the court of appeals provided Hentges with an opportunity to respond to the State's motion. Further, we reach our decision in this case only after Hentges, through counsel, has fully briefed and argued the legal issues, including whether to adopt the fugitive-dismissal rule in Minnesota and, if so, whether to apply the rule in this case. Yet, despite twice receiving notice of the potential applicability of the fugitive-dismissal rule and having several months to surrender while we considered his appeal, Hentges has refused to comply with the bench warrant. Thus, contrary to Hentges's argument, the record confirms both that Hentges has received adequate notice that his actions could result in the dismissal of his appeal, and that we have provided him with a meaningful opportunity to be heard. In any event, Hentges's argument assumes that we would apply the fugitive-dismissal rule to dismiss his appeal immediately. We decline to do so, and instead exercise our discretion to conclude that Hentges can avoid dismissal of his appeal by surrendering within 10 days.

### III.

For the foregoing reasons, we reverse the decision of the court of appeals. We also direct the court of appeals, on remand, to dismiss Hentges's appeal if he does not surrender to law-enforcement officials within 10 days after the date of filing of this opinion.

Reversed and remanded.

PAGE, Justice (concurring in part, dissenting in part).

I agree with the court's adoption of the fugitive-dismissal rule. I disagree, however, with the court's remand order. Because the rule is discretionary, I would

remand to the court of appeals to have it exercise its discretion in the first instance.