No. 112,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH L. SWAZEY, III,
*Appellant*.

SYLLABUS BY THE COURT

1.

An illegal sentence may be corrected at any time, even if the argument is raised for the first time on appeal.

2.

An illegal sentence is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served.

3.

Under K.S.A. 2014 Supp. 21-6824(b)-(c), if an offender is assigned a high risk status by a drug abuse assessment and either a moderate or high risk status by a criminal risk-need assessment, then the sentencing court is required to commit the offender to treatment in a drug abuse treatment program until the court determines the offender is suitable for discharge by the court, but in no case longer than 18 months.

1

4.

The mandatory drug treatment provision in K.S.A. 2014 Supp. 21-6824(a)(1) conflicts with K.S.A. 2014 Supp. 21-6805(d), which establishes an optional nonprison sentence for certain offenders.

5.

When a statute is plain and unambiguous, this court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.

6.

With any perceived ambiguity, this court must determine if it is possible to interpret the provisions of the various statutes in play in a way that renders them compatible, not contradictory.

7.

A specific statute controls over a general statute.

8.

Even when statutory language is clear, this court must construe statutes to avoid unreasonable or absurd results.

9.

When there is ambiguity between statutory provisions imposing a penalty for a crime, it should be resolved in a defendant's favor.

Appeal from Jackson District Court; MICHEAL A. IRELAND, judge. Opinion filed October 2, 2015. Sentence vacated; remanded with directions.

2

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Tim Liesmann*, assistant county attorney, and *Shawna Miller*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and WILLIAM R. MOTT, District Judge, assigned.

MOTT, J.: Joseph L. Swazey, III, appeals his sentence for one count of possession of methamphetamine and one count of fleeing or attempting to elude a police officer. He argues the district court imposed an illegal sentence by sentencing him to prison instead of drug treatment pursuant to K.S.A. 2014 Supp. 21-6824.

*Facts*

On June 26, 2014, Swazey pled no contest to one count of possession of methamphetamine and one count of fleeing or attempting to elude a police officer. The district court accepted his pleas and found him guilty of both offenses. Prior to sentencing, Swazey filed a motion seeking a downward dispositional or durational departure. In it, he requested that he be sentenced either to probation and drug treatment or, alternatively, to a term of 24 months' imprisonment. Swazey's criminal history placed him in drug grid block 5-C, a border box.

Swazey's sentencing hearing was held on July 25, 2014. During the hearing, Swazey's attorney requested that Swazey receive "Senate Bill 123 treatment," referring to drug treatment. The district court denied this request and sentenced him to a controlling durational departure sentence of 24 months in prison. Swazey appeals his sentence.

3

*An illegal sentence may be corrected at any time*

Swazey argues that K.S.A. 2014 Supp. 21-6824 required the district court to grant him probation with drug treatment rather than a prison sentence. As such, Swazey argues that his prison sentence was an illegal sentence. Although Swazey requested drug treatment at sentencing, he did not specifically raise this argument below. But an illegal sentence may be corrected at any time, even if the argument is raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 975, 318 P.3d 987 (2014); K.S.A. 22-3504.

> "An 'illegal sentence' is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

Whether a sentence is illegal is a question of law subject to de novo review by this court. *Kelly*, 298 Kan. at 975.

*The optional nonprison sanction statute vs. the mandatory drug treatment statute*

Swazey argues that the nonprison sanction outlined in K.S.A. 2014 Supp. 21-6824 is mandatory and controls in this case. The State, however, argues that K.S.A. 2014 Supp. 21-6824 is not mandatory and should be interpreted in a way that does not conflict with the *optional* nonprison sanction as contemplated by K.S.A. 2014 Supp. 21-6805(d). To resolve these arguments, this court must engage in statutory interpretation, which is a question of law subject to unlimited review. *State v. Kendall*, 300 Kan. 515, 520, 331 P.3d 763 (2014).

K.S.A. 2014 Supp. 21-6824(a) establishes a nonprison sanction of certified drug abuse treatment programs for certain offenders sentenced on or after November 1, 2003.

4

Under the statute, placement of adults in such treatment programs is limited to those convicted of certain crimes, such as unlawful possession of controlled substances. See K.S.A. 2014 Supp. 21-6824(a). A defendant further qualifies for treatment under the statute if he or she has no previous felony convictions for certain drug crimes and falls into grid blocks 5-C, 5-D, 5-E, 5-F, 5-G, 5-H, or 5-I of the sentencing guidelines for drug crimes. K.S.A. 2014 Supp. 21-6824(a)(1). Swazey met these requirements because his primary offense was possession of methamphetamine and his criminal history placed him in grid block 5-C. But these are not the only qualifications listed in the statute.

K.S.A. 2014 Supp. 21-6824(b)-(c) also states:

"(b) As a part of the presentence investigation pursuant to K.S.A. 2014 Supp. 21-6813, and amendments thereto, offenders who meet the requirements of subsection (a), unless otherwise specifically ordered by the court, shall be subject to:

(1) A drug abuse assessment which shall include a clinical interview with a mental health professional and a recommendation concerning drug abuse treatment for the offender; and

(2) a criminal risk-need assessment. The criminal risk-need assessment shall assign a high or low risk status to the offender.

"(c) If the offender is assigned a high risk status as determined by the drug abuse assessment performed pursuant to subsection (b)(1) and a moderate or high risk status as determined by the criminal risk-need assessment performed pursuant to subsection (b)(2), the sentencing court shall commit the offender to treatment in a drug abuse treatment program until the court determines the offender is suitable for discharge by the court. The term of treatment shall not exceed 18 months. The court may extend the term of probation, pursuant to subsection (c)(3) of K.S.A. 2014 Supp. 21-6608, and amendments thereto. The term of treatment may not exceed the term of probation."

In summary, the statute provides that an offender should receive a drug abuse assessment and a criminal risk-need assessment as part of his or her presentence investigation unless a court specifically orders otherwise. If the offender is assigned a

5

high risk status by the drug abuse assessment and either a moderate or high risk status by the criminal risk-need assessment, then "the sentencing court *shall* commit the offender to treatment in a drug abuse treatment program until the court determines the offender is suitable for discharge by the court," but in no case longer than 18 months. (Emphasis added.) K.S.A. 2014 Supp. 21-6824(c)

This mandatory statutory language is at odds with K.S.A. 2014 Supp. 21-6805(d), which states in part: "If an offense is classified in grid blocks 4-E, 4-F, 4-G, 4-H, 4-I, 5-C or 5-D, the court may impose an optional nonprison sentence as provided in subsection (q) of K.S.A. 2014 Supp. 21-6804, and amendments thereto." K.S.A. 2014 Supp. 21-6804(q) requires a court to make the following findings on the record before imposing a nonprison sanction:

"(1) An appropriate treatment program exists which is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and
"(2) the recommended treatment program is available and the offender can be admitted to such program within a reasonable period of time; or
"(3) the nonprison sanction will serve community safety interests by promoting offender reformation."

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. This court must first attempt to ascertain legislative intent by reading the language of the statute and giving common words their ordinary meanings. When a statute is plain and unambiguous, this court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014). With any perceived ambiguity, this court must determine if it is possible to interpret the provisions of the various statutes in play in a way that renders them compatible, not contradictory. *State v. Van Hoet*, 277 Kan. 815, Syl. ¶ 2, 89 P.3d 606 (2004). Here, when giving common words their ordinary meanings, there does appear to

6

be an ambiguity in the statutes. K.S.A. 2014 Supp. 21-6805(d) establishes a discretionary nonprison sanction for grid box 5-C, while K.S.A. 2014 Supp. 21-6824(c) states that if certain conditions are met, the sentencing court "shall" commit an offender falling into grid box 5-C to drug treatment.

There is no way for this court to reconcile the conflicting language of these sentencing statutes. If a sentencing court is required to commit an offender to treatment in a drug abuse program, there is no discretion. If a sentencing court is allowed discretion on the issue, there is no requirement. It should be noted that we have looked at the entirety of these statutes in an attempt to reconcile them and give effect to all of their provisions. But what this court found in the text actually cuts against the position of the State. There is evidence in K.S.A. 2014 Supp. 21-6824 that the legislature knew how to retain the effect of existing sentencing provisions, if it had chosen to do so. Pursuant to K.S.A. 2014 Supp. 21-6824(e), offenders in grid-box 5-A or 5-B are "subject to the departure sentencing statutes of the revised Kansas sentencing guidelines act." The fact the legislature did not see fit to craft a similar provision for offenders in grid-box 5-C is an indication the legislature meant the mandatory provisions of K.S.A. 2014 Supp. 21-6824 to take effect.

The State argues that no ambiguity exists between K.S.A. 2014 Supp. 21-6804, K.S.A. 2014 Supp. 21-6805, and K.S.A. 2014 Supp. 21-6824. Yet, it incongruously acknowledges that the statutes "overlap." The State also argues that "K.S.A. 21-6804(q) does not explicitly reference [K.S.A. 2014 Supp. 21-6824] because it also applies to crimes other than drug possession crimes." In other words, it acknowledges that K.S.A. 21-6824 is a more specific statute than K.S.A. 2014 Supp. 21-6804. A specific statute controls over a general statute. See *Sierra Club v. Moser*, 298 Kan. 22, 54, 310 P.3d 360 (2013). Therefore, for offenders that meet the criteria outlined in K.S.A. 2014 Supp. 21-6824, that statute controls their sentence.

7

The State also argues that construing K.S.A. 2014 Supp. 21-6824 to require a sentencing court to commit an offender to drug treatment creates "nonsensical results." Even when statutory language is clear, this court must construe statutes to avoid unreasonable or absurd results. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* ___U.S.___, 134 S. Ct. 162 (2013). The State argues that "[i]t does not make sense that a judge has discretion to order the assessment, but once ordered, the judge loses discretion on probation." It cites no authority supporting its apparent argument that a district judge must have discretion at every stage of a defendant's sentencing. In fact, our Supreme Court has stated that "[t]he sentencing of a defendant is strictly controlled by statute." *State v. Guder*, 293 Kan. 763, Syl. ¶ 1, 267 P.3d 751 (2012). There is nothing inherently absurd or unreasonable about requiring a district court to impose a term of probation after it has already chosen to allow the defendant to be subjected to assessments meant to gauge his amenability to drug treatment.

The State also argues that it would be nonsensical for a sentencing statute to mandate drug treatment in cases where an individual's drug abuse and criminal risks are elevated, yet allow a district court to impose a prison sentence on a low risk offender. There is nothing absurd or unreasonable about targeting a certain population for drug treatment. Further, a recent article in the University of Kansas Law Review cited research indicating that drug courts in other jurisdictions tend to be most effective for high risk, high need drug offenders. Comment, *A Better Way: Rethinking SB 123 Probationary Drug Treatment in Kansas*, 62 U. Kan. L. Rev. 1365, 1376 (2014). This is one plausible reason to target high risk offenders in Kansas. It is not our place to question the wisdom of legislative policy in the process of interpreting statutes; we are duty bound to operate within the framework of the legislature's words.

Finally, since the legislature has permitted the existence of conflicting statutory provisions, the rule of lenity must be considered. When there is ambiguity between

8

statutory provisions imposing a penalty for a crime, it should be resolved in a defendant's favor. *State v. Horn*, 288 Kan. 690, Syl. ¶ 3, 206 P.3d 526 (2009). As with the other canons of statutory interpretation, the rule of lenity points us toward resolving the conflicting provisions in favor of Swazey.

*The need for factual findings regarding the raw LSI-R score on remand*

In this case, Swazey completed a drug abuse assessment referred to as a SASSI. It indicated that Swazey had a "high probability of having a substance dependence disorder." Although this finding does not directly correspond with the statutory term "high risk," Swazey's results appear to qualify him for treatment under K.S.A. 2014 Supp. 21-6824(c). Swazey also completed a criminal risk-need assessment called the Level of Service Inventory—Revised (LSI-R). The report, however, did not assign a risk classification to Swazey under this test. Rather, it provided a numerical score of 35 and stated that his supervision level was "ISL I." There is nothing in the record that explains how Swazey's score of 35 should be interpreted or how a person's supervision level correlates with risk assessments. Further, there is no statute or regulation that could assist in interpreting the raw score from Swazey's LSI-R.

In sum, the record is devoid of any evidence establishing that Swazey was assigned a moderate or high risk status by the LSI-R. The district court did not make any explicit findings on that point either. If Swazey's LSI-R score placed him in the moderate or high risk category, then he was entitled to mandatory drug treatment and probation rather than the prison sentence he received. Given that the district court did not consider the mandatory provisions of K.S.A. 2014 Supp. 21-6824 at time of sentencing, we find Swazey's sentence was illegally imposed. Accordingly, we vacate the sentence and remand for additional findings and resentencing in accordance with this opinion.

Sentence vacated; remanded with directions.

9