NOT DESIGNATED FOR PUBLICATION

No. 123,312

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MEGAN RENEE YBARRA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Opinion filed January 28, 2022. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Megan Williams*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., POWELL and HURST, JJ.

PER CURIAM: Megan Ybarra appeals her sentence of imprisonment—claiming only that the district court was required to sentence her to drug abuse treatment rather than prison. This court disagrees, finding that Ybarra's drug abuse and criminal risk-need assessments did not qualify her for mandatory drug treatment sentencing. The district court's sentence is affirmed.

1

FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, Ybarra pled no contest to possession of methamphetamine in violation of K.S.A. 2020 Supp. 21-5706(a), a severity level 5 drug felony. In exchange for her plea agreement, the State agreed to recommend a presumptive probation sentence. The presentence investigation (PSI) report indicated a criminal history score of F, which correlated to a presumptive probation sentence. However, the PSI report also indicated that Ybarra was on probation for a felony at the time she committed her current offense and thus a special sentencing rule applied. The special rule gave the district court discretion to impose a prison sentence even though her current offense presumed a nonprison sentence. See K.S.A. 2020 Supp. 21-6604(f)(1).

The PSI report also showed that Ybarra had a low score on her drug abuse assessment compiled under the Substance Abuse Subtle Screening Inventory (SASSI). Ybarra's criminal risk-need assessment under the Level of Service Inventory—Revised (LSI-R) was also attached to the PSI report, and it designated Ybarra an overall maximum risk with a score of 25. As a result, her PSI report listed community corrections as an option based on her LSI-R score.

At the September 2020 sentencing, both Ybarra and the State requested the district court follow the terms of the plea agreement. Ybarra also told the district court she obtained a Regional Alcohol and Drug Assessment Center (RADAC) evaluation and had been in the process of completing and complying with its recommendations. Exercising its discretion, the district court declined to follow the parties' recommendations. Instead, the court relied on the special sentencing rule and sentenced Ybarra to 17 months' imprisonment. Ybarra appealed.

In May 2021, while her appeal was pending, the State filed a Notice of Change in Custodial Status that stated Ybarra did not report to serve her sentence, and her

whereabouts were unknown. This court subsequently remanded this case to the district court for a hearing pursuant to *State v. Raiburn*, 289 Kan. 319, 212 P.3d 1029 (2009), to determine whether Ybarra absconded from the court's jurisdiction.

On September 10, 2021, the district court held the hearing and determined Ybarra had absconded. However, less than a week later the State discovered Ybarra had been arrested on September 7, 2021, in Douglas County and remained in custody there. Later that month, the State filed a Notice of Change in Custodial Status reflecting Ybarra's current location. Because Ybarra is back in custody, this court now addresses the merits of her appeal.

## DISCUSSION

On appeal, Ybarra brings only one claim. She contends the district court erred by sentencing her to imprisonment rather than imposing statutorily mandated drug treatment, and thus her sentence is illegal. When an offender is convicted of a felony in violation of K.S.A. 2020 Supp. 21-5706, as Ybarra was here, and meets certain statutory guidelines—the district court must impose a term of nonprison certified drug abuse treatment. See K.S.A. 2020 Supp. 21-6824(a)-(c).

A sentence is illegal if it (1) is imposed by a court without jurisdiction; (2) does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) is ambiguous about the time and manner in which it is to be served. K.S.A. 2020 Supp. 22-3504(c)(1). Whether a sentence is illegal within the meaning of K.S.A. 2020 Supp. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). An illegal sentence may be corrected at any time, even if the appellant raises the argument for the first time on appeal. 310 Kan. 367, Syl. ¶ 2.

When an offender has a criminal history within a certain range, which the parties agree Ybarra has here, and is assigned a risk status from a drug abuse assessment and a criminal risk-need assessment that meets the criteria for participation in a drug abuse treatment program, "the sentencing court shall commit the offender to treatment in a drug abuse treatment program." K.S.A. 2020 Supp. 21-6824(b)(1)-(2), (c). The district court is required to sentence an offender to drug abuse treatment programs when the offender meets the statutory requirements—in those cases drug abuse treatment is mandatory. *State v. Andelt*, 289 Kan. 763, 217 P.3d 976 (2009) (analyzing a previous, but substantially similar, version of the drug abuse treatment sentencing statute was mandatory). Kansas has adopted the LSI-R for the criminal risk-need assessment and the SASSI as the drug abuse risk status assessment. An offender must have a high-risk score on the SASSI and a moderate or high-risk score on the LSI-R, along with a qualifying criminal history score, to be subject to a mandatory drug treatment sentence. See K.S.A. 2020 Supp. 21-6824(c); *State v. Swazey*, 51 Kan. App. 2d 999, 1002, 357 P.3d 893 (2015) (analyzing a prior version of K.S.A. 2020 Supp. 21-6824 with risk status scores that are identical to the current requirements).

The PSI report indicated Ybarra had a criminal history score of F with a drug offense severity level 5 resulting in a presumptive probation sentence—which meant she met one criteria for mandatory drug treatment. The LSI-R gave Ybarra a score of 25 and identified her risk level as "maximum." The State and Ybarra agree that the LSI-R also qualified Ybarra for sentencing to mandatory drug treatment. The only dispute is the consequence of Ybarra's SASSI drug abuse assessment. The PSI report noted her SASSI score was "low," and she was "not eligible" for mandatory drug treatment.

Ybarra seems to argue that the overall evidence demonstrates she should have qualified for mandatory drug treatment and that there was no SASSI summary or report in the record to explain why she had a "low" SASSI score. Ybarra relies on *Swazey* to claim that the district court should have considered the mandatory sentencing

4

requirements of K.S.A. 2020 Supp. 21-6824 even though her SASSI score in the PSI report did not qualify her for mandatory drug treatment. In *Swazey*, the offender received a SASSI risk status that qualified Swazey for mandatory drug treatment, but the record did not indicate whether he had a qualifying LSI-R risk status. There, the record contained the LSI-R score of 35—but it did not indicate if that numerical score correlated to a low, moderate, or high-risk status. The district court did not address whether the offender qualified for mandatory drug treatment and sentenced him to imprisonment. This case is not like *Swazey* because here, the district court had both the SASSI and LSI-R risk status determinations. See 51 Kan. App. 2d at 1005 ("the record is devoid of any evidence establishing that [the offender] was assigned a moderate or high-risk status by the LSI-R").

The district court here had both required scores—a high-risk status on the LSI-R and a low-risk status on the SASSI. The problem for Ybarra is that these scores do not meet the statutory requirement for mandatory drug treatment sentencing. While it is true that there was no description, summary, or reason provided for the low risk assigned on the SASSI—the statute does not require such an explanation. See K.S.A. 2020 Supp. 21-6824(c). It merely requires a "risk status as determined by the drug abuse assessment," which is determined using the SASSI and a "risk status as determined by the criminal risk-need assessment," which is determined using the LSI-R. K.S.A. 2020 Supp. 21-6824(c). The district court had both of those "risk status" determinations and unfortunately for Ybarra, her SASSI drug abuse assessment did not qualify her for mandatory drug treatment.

The district court did not err when it refused to sentence Ybarra to mandatory drug treatment under K.S.A. 2020 Supp. 21-6824. Ybarra's sentence is affirmed.

Affirmed.