No. 95,908

STATE OF KANSAS, *Appellee*, v. STEVEN L. RAIBURN, *Appellant*.
(212 P.3d 1029)

Opinion filed July 24, 2009.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Marla Foster Ware*, county attorney, argued the cause, and *Paul J. Morrison*, former attorney general, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: The fugitive disentitlement doctrine generally holds that the appeal of a criminal defendant who has absconded from the jurisdiction of the courts should be dismissed. This case requires us to decide whether the fugitive disentitlement doctrine is alive in Kansas and, if so, whether it is applicable when the record shows only that the State has alleged the defendant failed to report to his or her probation officer.

Steven L. Raiburn was convicted of one count of felony possession of marijuana. He was sentenced to a term of 20 months' imprisonment, with his prison term suspended and the imposition of 18 months' probation. He timely appealed. Shortly thereafter, the State filed a motion in the district court to revoke Raiburn's probation, alleging failure to report to his probation officer.

On appeal to the Court of Appeals, Raiburn raised two issues concerning his conviction. The State raised an additional issue—

whether Raiburn had abandoned his right to appeal by absconding. The Court of Appeals issued a show cause order directing Raiburn to demonstrate that he had submitted to the jurisdiction of the Kansas district court by May 11, 2007, or the appeal would be dismissed with prejudice. Raiburn filed a response addressing several reasons why the appeal should not be dismissed but did not directly address his whereabouts. The Court of Appeals ordered the parties to file supplemental briefs addressing the absconder issue.

Ultimately, the Court of Appeals elected to dismiss the appeal. *State v. Raiburn*, 38 Kan. App. 2d 703, 171 P.3d 654 (2007). This court granted Raiburn's petition for review. On August 7, 2008, this court issued an order directing the parties to address at oral argument the question of Raiburn's fugitive status and specifically whether Raiburn has submitted to the jurisdiction of the district court. At oral argument, the State indicated that the bench warrant for Raiburn was still outstanding. Counsel for Raiburn appropriately declined to answer questions regarding his client's whereabouts.

*A Brief History of the Fugitive Disentitlement Doctrine*

For over 100 years, Kansas courts have followed a loosely formulated rule, variously known as the fugitive disentitlement doctrine, the fugitive dismissal rule, or the escape rule, which allows courts to dismiss an appeal when a criminal defendant escapes during the pendency of the appeal. See *State v. Scott*, 70 Kan. 692, 79 P. 126 (1905). The law in Kansas is not as fully developed as it is in other states. Kansas has no statute or rule mandating, or directly authorizing, application of the fugitive disentitlement doctrine, see Supreme Court Rule 5.05 (2008 Kan. Ct. R. Annot. 35) (appellate court may dismiss for any other reason the law requires), and invocation of the doctrine by the appellate courts has been relatively rare. The doctrine is well established, however, in many different variations, in other jurisdictions.

Perhaps the first instance of the United States Supreme Court invoking the doctrine was in 1876, when the Court held that it was within its authority to "refuse to hear a criminal case in error, unless

the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render." *Smith v. United States*, 94 U.S. (4 Otto) 97, 97, 24 L. Ed. 32 (1876). In *Molinaro v. New Jersey*, 396 U.S. 365, 366, 24 L. Ed. 2d 586, 90 S. Ct. 498 (1970), the Supreme Court reaffirmed its support of the doctrine, stating: "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction." In 1993, the Supreme Court again revisited the issue: "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239, 122 L. Ed. 2d 581, 113 S. Ct. 1199 (1993).

The Supreme Court has not only applied the fugitive disentitlement doctrine to appeals pending before that Court, it has upheld the right of states to implement the doctrine statutorily as well as through case law in state courts. In *Estelle v. Dorrough*, 420 U.S. 534, 43 L. Ed. 2d 377, 95 S. Ct. 1173 (1975), the defendant escaped from jail after filing his appeal and was recaptured 2 days after the escape. After his recapture, the Texas Court of Criminal Appeals dismissed his case pursuant to Texas Code of Criminal Procedure Annotated, Article 44.09 (1966), which provided for automatic dismissal of an appeal when the defendant escaped during the pendency of the appeal unless the defendant returned voluntarily within 10 days. The United States Supreme Court upheld the constitutionality of the statute, stating: "Disposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law. [Citation omitted.] This Court itself has long followed the practice of declining to review the convictions of escaped criminal defendants. [Citations omitted.]" 420 U.S. at 537.

The vast majority of states that have not codified the fugitive dismissal rule have judicially adopted it. See, *e.g.*, *Young v. State*, 518 So. 2d 822, 824 (Ala. Crim. App. 1987), *cert. denied* 488 U.S. 834 (1988) ("For over a century, Alabama appellate courts have exercised the discretion to summarily dismiss the appeals of those

who have escaped custody while their appeals are pending."); *State v. Dyer*, 551 N.W.2d 320, 320-21 (Iowa 1996) (exercising "inherent power" to dismiss appeal because of fugitive status despite there being no statute or rule authorizing dismissal on such grounds); *State v. Bell*, 608 N.W.2d 232, 233-36 (N.D. 2000) (defendant precluded from continuing appeal because he forfeited and abandoned appeal by escaping); *State v. Lamontae D.M.*, 223 Wis. 2d 503, 507-10, 589 N.W.2d 415 (Wis. App. 1998) (applying escape rule to juvenile absconder and dismissing appeal).

There are, however, jurisdictions that do not subscribe to the fugitive disentitlement doctrine. Prior to 1967, Louisiana had statutory authority mandating dismissals where the appellant was a fugitive from justice. See *State v. Jugger*, 217 La. 687, 694, 47 So. 2d 46 (1950). The statute was removed from the revised version of the Louisiana Code of Criminal Procedure that became effective January 1, 1967. See *State v. Falcone*, 383 So. 2d 1243, 1246 (La. 1980). The Official Revision Comment to the Louisiana Code of Crim. Proc. Ann., art. 919, p. 70 (West 2008), explains:

"The provision is omitted from this Code, because it is unfair to the defendant. For example, if a man has appealed from a death sentence and he escapes, under [the former statute], the effect is to make the escape a capital offense, since he loses his right to appeal. Furthermore, the more frightened a convicted defendant is, the more likely he is to attempt to escape, and he should not be denied his right to appeal because of such circumstances."

See *Falcone*, 383 So. 2d at 1246-47. While providing a novel justification for repealing the codification of the fugitive disentitlement doctrine, Louisiana is in a distinct minority of states refusing to dismiss appeals in which the appellant is a fugitive from justice.

Kansas first utilized the doctrine in *City of Holton v. Mannix*, 6 Kan. App. 105, 49 P. 679 (1897). The Court of Appeals ordered that unless an escaped appellant submitted to the jurisdiction of the court within 60 days, the appeal would be dismissed. 6 Kan. App. at 106. In analyzing the propriety of retaining the appeal, the court stated: "If this court should affirm the judgment, he is not likely to appear, and submit to his sentence; and if this court should reverse the judgment, and order a new trial, he will appear or not, as he will consider most to his interest." 6 Kan. App. at 106. "It is

clearly within our discretion to refuse to hear a criminal case on appeal unless the appellant is where he can be made to respond to such judgment as might be rendered." 6 Kan. App. at 106.

Less than 10 years later, the Kansas Supreme Court dismissed an appeal under the fugitive disentitlement doctrine. See *Scott*, 70 Kan. at 693-94 (appeal dismissed where defendant violated the conditions of his postconviction bond and failed to appear for a hearing set after notice of appeal had been filed).

In 1978, this court affirmed a trial court's dismissal of an appeal based on a finding that the appeal had been abandoned. *Weser v. State*, 224 Kan. 272, 274, 579 P.2d 1214 (1978). The defendant had escaped from custody after sentencing, and the trial court granted the State's motion to dismiss the appeal approximately 2 weeks after the escape and after the notice of appeal had been filed. After the defendant's capture and reincarceration, he filed a motion to reinstate his appeal, which the trial court denied. The defendant subsequently filed a K.S.A. 60-1507 motion, which was dismissed by the trial court on a motion by the State that argued the defendant failed to allege grounds showing exceptional circumstances for failing to perfect his direct appeal. On review of the dismissal, this court found that because the appellant's attorney made no attempt to assure the appellant's appearance and the appellant voluntarily remained at large until captured and reincarcerated, the trial court was correct in inferring the appellant had abandoned his appeal. 224 Kan. at 273. The court held that "dismissal of an appeal taken by a defendant in a criminal action who intentionally abandons appellate review of his constitutional claim is not an exceptional circumstance excusing a direct appeal." 224 Kan. at 274.

In 1984, the Court of Appeals again invoked the fugitive disentitlement doctrine, holding: "A convicted defendant who is a fugitive from justice is not entitled to ask an appellate court to correct alleged trial errors and is deemed to have waived the right to appeal." *State v. Scott*, 9 Kan. App. 2d 322, 323, 675 P.2d 942 (1984).

Various rationales have been provided for the doctrine. Some courts, including the United States Supreme Court, have based dismissal on a theory of disentitlement, which treats the escape

during the pendency of the appeal as an abandonment of the appeal. "While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro*, 396 U.S. at 366. Twenty-three years after *Molinaro*, the Court reaffirmed the disentitlement rationale, stating: "As applied by this Court, then, the rule allowing dismissal of fugitives' appeals has rested in part on enforceability concerns, and in part on a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment." *Ortega-Rodriguez*, 507 U.S. at 240.

An additional justification for the fugitive disentitlement doctrine is that "dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice." *Ortega-Rodriguez*, 507 U.S. at 242 (citing *Estelle*, 420 U.S. at 537). Similarly, the Supreme Court has held that the fugitive disentitlement doctrine serves to encourage respect for the courts. The idea that an appellant would be able to submit to the jurisdiction of a court only if the outcome of the appeal is pleasing to the appellant is

"a contempt of [a court's] authority, to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ, than that the latter should dictate the terms upon which he will consent to surrender himself to its custody." *Allen v. Georgia*, 166 U.S. 138, 141, 41 L. Ed. 949, 17 S. Ct. 525 (1897).

The longest standing basis for the fugitive disentitlement doctrine, however, is the concern for the enforceability of a court's judgment: "If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider more for his interest." *Smith*, 94 U.S. at 97. As noted earlier and reflected in the following quote from *City of Holton*, 6 Kan. App. at 106, Kansas has adopted this rationale: "It is clearly within our discretion to refuse to hear a criminal case on appeal unless the appellant is where he can be made to respond to such judgment as might be rendered." The

Court of Appeals applied the doctrine and this rationale to the present case, dismissing the appeal and holding: "An appellate court has the discretion to refrain from addressing issues brought by appellants who, because of their fugitive status, will not be affected by any judgment the court may issue." *Raiburn*, 38 Kan. App. 2d 703, Syl. ¶ 1.

### *Raiburn's Arguments*

In his brief to this court, Raiburn sets out a number of reasons why the Court of Appeals erred in dismissing his appeal. First, he argues that the appeal is not moot. This argument appears to be based upon a phrase which Raiburn isolates from the Court of Appeals opinion: " '[A]n appellate court does not decide moot questions or render advisory opinions.' " 38 Kan. App. 2d at 705 (quoting *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, Syl. ¶ 1, 912 P.2d 716 [1996]). He argues that a fugitive case differs from a moot case.

Raiburn's interpretation of the quoted language removes it from its context. He had argued to the Court of Appeals the authority for dismissing an appeal could only come from Supreme Court Rule or statute. The Court of Appeals quoted from *Duffy* and cited *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003) (issue not presented to the lower court will not be considered on appeal), to demonstrate that the Supreme Court Rules or statutes regarding appellate procedure are not the only sources of authority for dismissal of an appeal. *Raiburn*, 38 Kan. App. 2d at 705. Raiburn renews this argument in his brief before this court, contending that the right to appeal is created by statute and may not be abrogated by case law. In this context, the Court of Appeals' reliance on *Duffy* and *Williams* is appropriate: certain common-law rules, such as mootness and the fugitive disentitlement doctrine, may call for dismissal, notwithstanding a statutory right to appeal. See also *Dyer*, 551 N.W.2d at 320-21 (Iowa court exercising "inherent power" to dismiss appeal because of fugitive status despite lack of statute or rule authorizing dismissal on such grounds). While the exercise of a court's inherent power to dismiss in these circumstances is dis-

cretionary, there is no doubt the courts have the power to dismiss appeals.

Raiburn argues the fact that fugitive status does not render a case moot "serves to nullify one of the doctrine's previous justifications . . . ineffectiveness of any appellate judgment." Additionally, Raiburn submits authority for the proposition that appeals may be heard even when the appellant has died during the pendency of the appeal, see *State v. Jones*, 220 Kan. 136, 137, 551 P.2d 801 (1976), and argues that because the death of a criminal defendant does not mandate dismissal of an appeal, a defendant's fugitive status should also not mandate dismissal.

We see a significant difference between the state of being a fugitive and that of being dead. Presumably, the former is significantly more often a matter of choice than the latter. While good reasons may exist for determining issues raised by a defendant who suffers an untimely demise, we do not believe that the defendant who chooses to abscond should be given the option of invoking the assistance of the courts to review his or her appeal and then only accepting the outcome if it is to his or her approval.

Raiburn next argues that violation of the terms of his probation is a matter of concern for the trial court, not for this court. He cites *Ortega-Rodriguez* in support of this proposition. The present case is easily distinguishable from *Ortega-Rodriguez*. In *Ortega-Rodriguez*, the defendant escaped after conviction, was sentenced in absentia, and was recaptured before filing a notice of appeal; the fugitive status did not occur during the appellate process. While Raiburn correctly cites *Ortega-Rodriguez* for the proposition that a district court is better situated than an appellate court to impose punishment for absconding during district court proceedings, that is not the case here: Raiburn apparently absconded during the appellate process. "Absent some connection between a defendant's fugitive status and his appeal, *as provided when a defendant is at large during the 'ongoing appellate process,'* [citation omitted,] the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." (Emphasis added.) 507 U.S. at 249. The fact that Raiburn, if he has absconded, has done so during the pendency of his appeal constitutes a "connection between a de-

fendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." 507 U.S. at 244. Moreover, having filed a notice of appeal, Raiburn has placed jurisdiction to deal with his absence in the appellate courts.

Raiburn argues that even if an appellate court has authority to invoke the fugitive disentitlement doctrine and dismiss his appeal, he does not fall into the category of "fugitive" because he has not escaped from custody. He cites *Dunn v. Hindman*, 18 Kan. App. 2d 537, 541, 855 P.2d 994, *rev. denied* 253 Kan. 857 (1993), for the proposition that a fugitive from justice is "a person who commits a crime in one state and is afterwards found in another state." Although this definition appears to be accurate in the context of extradition cases, it has no application to the fugitive disentitlement doctrine. It does not go to the policy grounds for the disentitlement doctrine and strangely suggests that an appellant who is hiding on the Kansas side of the border is entitled to have his or her appeal heard, but an appellant who is hiding just across the border in Colorado has abandoned his or her appeal.

More compelling is *State v. Hess*, 180 Kan. 472, 475, 304 P.2d 474 (1956), also cited by Raiburn, in which this court affirmed a trial court finding that a " '[m]ere failure to appear at a particular term would not make the defendant a fugitive from justice, but only an absentee.' " Whether a failure to appear as required by conditions of probation constitutes an "escape from custody" sufficient to justify dismissal of an appeal under the fugitive disentitlement doctrine is a debatable question, with jurisdictions weighing in on both sides of the issue.

In *United States v. Gonzalez*, 300 F.3d 1048 (9th Cir. 2002), the Ninth Circuit Court of Appeals addressed the issue of whether failure to report under the terms of probation established fugitive status. The defendant was sentenced to 60 days' probation but failed to report to his probation officer, who filed a violation report and requested a warrant for the defendant's arrest. After the defendant was arrested, the prosecution argued for dismissal under the doctrine of fugitive disentitlement. The court disagreed: "The doctrine does not apply to an appellant just because he has not reported as directed to the probation office, in the absence of a

showing that he has fled or hidden himself from the jurisdiction of the court." 300 F.3d at 1051. Additionally, the court went so far as to say that violation of probation terms does not rise to the level of establishing fugitive status: "The record does not establish that Gonzalez was ever a fugitive at all, just that he didn't comply with his conditions of probation. . . . The purposes of the fugitive disentitlement doctrine would not be furthered by applying it here." 300 F.3d at 1051.

However, in a noncriminal context, the Ninth Circuit found that failure to report an address change to the required parties for an extended period of time was sufficient to justify dismissal of an appeal under the fugitive disentitlement doctrine in *Antonio-Martinez v. I.N.S.*, 317 F.3d 1089, 1091-93 (9th Cir. 2003). The court dismissed an appeal by a defendant who failed to notify his attorney or the Immigration and Naturalization Service of a new address and subsequently could not be located by his attorney or the court. 317 F.3d at 1093. At the time of the opinion, the defendant had been "out of touch for well over two years." 317 F.3d at 1091. The court held that "[t]he paradigmatic object of the [fugitive disentitlement] doctrine is the convicted criminal who flees while his appeal is pending. [Citation omitted.] But the doctrine applies in immigration cases as well." 317 F.3d at 1092. Although there was no evidence that the defendant did anything beyond failing to report a change of address, the court held Antonio-Martinez had failed to satisfy his legal obligations and that failure had led to the inability to locate him. 317 F.3d at 1092.

"His disappearance has the same effect as a criminal defendant's flight. By failing to report his change of address to either his lawyer or the INS for an extended period of time, he has effectively put himself beyond the jurisdiction of the court. Because no one has any clue where Antonio-Martinez is, his petition has the same 'heads I win, tails you'll never find me' quality that justifies disentitlement in other contexts. Those who invoke our appellate jurisdiction must take the bitter with the sweet: They cannot ask us to overturn adverse judgments while insulating themselves from the consequences of an unfavorable result." 317 F.3d at 1093.

The Tenth Circuit Court of Appeals has held that a violation of terms of postrelease supervision is sufficient to establish fugitive status for purposes of applying the fugitive disentitlement doctrine:

"A term of supervised release is an integral part of a judgment and sentence . . . . This court will not diminish the importance of that period by disregarding the status of those who become fugitives during supervised release." *United States v. Hanzlicek*, 187 F.3d 1219, 1221 (10th Cir. 1999); see also *United States v. Lantigua-Bonilla*, 83 F.3d 541, 542 (1st Cir. 1996) (By failing to report to postrelease supervision, the appellant was "equally 'disentitled' to call on the resources of the appeals court as a defendant who escapes to avoid further custody.").

Many state courts have held that violation of the reporting terms of probation may suffice to show fugitivity for purposes of the fugitive disentitlement doctrine. For example, Oregon courts have taken the position that violating reporting requirements of either probation or postrelease supervision suffices to satisfy fugitive status under the fugitive disentitlement doctrine. See *State v. Squeglia*, 208 Or. App. 496, 499-500, 145 P.3d 292 (2006) (failure to report as required by probation terms constitutes absconding); *State v. Nofziger*, 206 Or. App. 588, 589-90, 138 P.3d 57 (2006) (failure to report to probation officer is conscious effort to avoid supervision and warrants dismissal of appeal); see also *State v. Larrea*, 130 Idaho 290, 291-92, 939 P.2d 866 (Ct. App. 1997) (dismissal of appeal warranted where defendant had absconded from probation); *Commonwealth v. Simon*, 391 Mass. 1010, 1010-11, 461 N.E.2d 758 (1984) (defendant who failed to report for probation was fugitive, and appeal was dismissed); *Hicks v. State*, 824 S.W.2d 132, 133-35 (Mo. App. 1992) (the escape rule applies where the defendant knowingly violated the terms of his probation by leaving the state without his probation officer's permission); *Boyd v. State*, 53 S.W.3d 432, 433 (Tex. App. 2001) (appeals dismissed when defendant mailed electronic monitoring equipment to probation officer and monitoring was term of release on bonds); *State v. Koloske*, 100 Wash. 2d 889, 891-92, 676 P.2d 456 (1984) (appeal dismissed where appellant failed to contact probation officer or appear for arraignment on other charges), *overruled on other grounds State v. Brown*, 111 Wash. 2d 124, 761 P.2d 588 (1988).

Other courts have analyzed the issue in terms of whether escape is possible when the defendant is not physically restrained. See

*State v. Crump*, 128 S.W.3d 642, 643 (Mo. App. 2004) ("A defendant's failure to appear constitutes an 'escape' for purposes of applying the escape rule."); *Porras v. State*, 966 S.W.2d 764, 765 (Tex. App. 1998) (appeal dismissed when defendant "escaped custody" by violating terms of his appeal bond and his whereabouts were unknown); *Luciano v. State*, 906 S.W.2d 523, 525-26, (Tex. Crim. App. 1995) (the word "custody" for purposes of the fugitive disentitlement rule encompasses both physical imprisonment and the power to imprison). But see *Flowers v. State*, 608 So. 2d 764, 764 (Ala. Crim. App. 1992) (failing to return to trial as ordered while free on bond did not constitute "escape" from custody); *State v. Ford*, 205 Or. App. 506, 510-13, 134 P.3d 959 (2006) (failure to comply with probation conditions unrelated to reporting to authorities combined with failure to respond to subsequent arrest warrant did not justify dismissal of appeal under fugitive disentitlement doctrine); *State v. Rempel*, 114 Wash. 2d 77, 79-83, 785 P.2d 1134 (1990) (appeal retained and decided on merits despite whereabouts of defendant unknown, failure to report as required to community corrections upon release from incarceration, and bench warrant issued for defendant's arrest).

If it can be shown that a defendant has more likely than not chosen to abscond from the reach of the court and that reasonable measures have been taken to locate him or her which have proved unsuccessful, then the rationale for the fugitive disentitlement doctrine—abandonment or waiver of the appeal and issues of enforceability of the judgment—applies with equal force to the defendant who has violated the reporting terms of probation as to the defendant who has escaped physical custody. But even if such a probation violation may invoke the fugitive disentitlement doctrine, and we hold that it may, it has not been demonstrated that Raiburn violated the terms of his probation or that he is a fugitive. The record here shows only an allegation by the State that he has failed to report as required. Generally, there must be some determination that the appellant is actually a fugitive.

There is little discussion in published case law regarding who may raise the issue and which party has the burden of proving or disproving fugitive status in order to determine whether the fugi-

tive disentitlement doctrine applies. The Texas statute cited in *Estelle v. Dorrough*, 420 U.S. 534, 535, 43 L. Ed. 2d 377, 95 S. Ct. 1173 (1975), provided: "Upon the fact of such escape being made to appear, the court shall, on motion of the State's attorney, dismiss the appeal . . . ." It appears that, once the government alleges fugitive status, the burden rests on the defendant to prove that he or she is in the custody of the court. See *Smith v. United States*, 94 U.S. (4 Otto) 97, 98, 24 L. Ed. 32 (1876) ("[U]nless the *plaintiff in error submit himself* to the jurisdiction of the court below . . . , the cause [will] be left off the docket.") (Emphasis added.); *State v. Fettel*, 210 Or. App. 404, 407, 150 P.3d 1076 (2007) (Oregon Rule of Appellate Procedure 8.05(3) has been held to place on the State the burden of making a prima facie showing that, more likely than not, defendant has absconded from jurisdiction or is secreting himself or herself within jurisdiction.).

Under the facts of this case, where the defendant appears to have absconded while on probation, something more than a mere allegation by the State in its brief that the defendant has failed to report to his probation officer is necessary to invoke the fugitive disentitlement doctrine. We hold that the burden is upon the State to raise the issue to the appellate court by filing a motion to dismiss the appeal alleging grounds that the defendant is a fugitive. In the absence of such a motion, the appeal should proceed normally. If the State files a motion and the appellate court determines that the State's motion is sufficient to raise the issue, then in order to invoke the doctrine when the allegation is based on the defendant's failure to comply with a reporting condition of probation, the appellate court must remand the matter to the district court for an evidentiary hearing on fugitive status. As in any probation violation hearing, the State must show by a preponderance of the evidence that the defendant has absconded. If the district court finds that the defendant has not absconded, the doctrine does not apply and the initial appeal to the Court of Appeals may proceed. If the finding is made that, more likely than not, the defendant has absconded, then the appellate court should review that finding to determine whether it is supported by substantial competent evidence. Once it has been determined by such evidence that the

defendant is a fugitive, the doctrine applies and the appeal may then be dismissed. We note, however, that the decision to dismiss lies within the sound discretion of the appellate court and is subject to the same exceptions as our other doctrines precluding appellate review. See *State v. Williams*, 275 Kan. 284, Syl. ¶ 2, 64 P.3d 353 (2003) (exception to the general rule that a matter not presented to the lower court will not be considered on appeal applies when consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights).

The fugitive disentitlement doctrine has been recognized in Kansas for over 100 years. It remains a valid method of dismissing an appeal when a defendant has chosen to thwart the appellate process by absconding from the jurisdiction of the courts. In this case, however, the State has done no more than raise the possibility that the defendant is a fugitive in its brief. That allegation is an insufficient basis on which to deprive the defendant of his statutory right to an appeal. Therefore, the Court of Appeals' decision is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals with instructions for further proceedings consistent with this opinion.