NOT DESIGNATED FOR PUBLICATION

No. 118,114

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LUIS MATURINO-RUIZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Opinion filed August 23, 2019. Reversed and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Luis Maturino-Ruiz pleaded guilty to driving under the influence (DUI). At sentencing, the trial court sentenced Maturino-Ruiz as a felony DUI offender because it concluded that the conviction was Maturino-Ruiz' third DUI in 10 years. Maturino-Ruiz appealed, arguing that his two previous DUIs should not have been used to increase his sentence. While his appeal was pending, this court remanded to the trial court for a hearing to determine if Maturino-Ruiz was a fugitive for the purposes of the fugitive disentitlement doctrine. The trial court ruled that he was. On appeal, Maturino-

1

Ruiz contends that the trial court erred in concluding that his acceptance of a voluntary deportation showed that he was an absconder. For the reasons stated below, we reverse the trial court's ruling that Maturino-Ruiz was an absconder. Therefore, we will maintain his sentencing appeal. Accordingly, we reverse and remand to the trial court for resentencing consistent with this opinion.

In April 2016, the State charged Luis Maturino-Ruiz with driving under the influence (DUI) and driving with a suspended license. On April 17, 2017, Maturino-Ruiz pleaded guilty to the DUI charge; in exchange, the State dropped the driving with a suspended license charge. The signed plea agreement stated that the parties had an "understanding that this is the Defendant's 3rd lifetime DUI."

Maturino-Ruiz' presentence investigation (PSI) report revealed two previous DUI convictions: one from Riverside County California Superior Court in 2006, and one from Wichita Municipal Court in 2011. At sentencing on May 31, 2017, the trial court judge stated that Maturino-Ruiz had "two prior DUI's within the last 10 years of the offense date." Maturino-Ruiz agreed "that all of the entries in [his] criminal history are true and correct." The trial court sentenced Maturino-Ruiz to 48 hours in jail followed by 90 days of house arrest and then 12 months of postimprisonment supervision. Maturino-Ruiz timely appealed his conviction and sentence.

Maturino-Ruiz filed his appellate brief on January 16, 2018. He raised two challenges to his sentence. On May 17, 2018, the State filed a "Notice of Change in Custodial Status Pursuant to Supreme Court Rule 2.042." The State maintained that Maturino-Ruiz "violated the terms and conditions of house arrest by leaving the country" because "after attending hearings on his residency status, [Maturino-Ruiz] chose to remove himself from the United States of America on September 1, 2017." Also on May 17, 2018, the State moved to remand Maturino-Ruiz' case to the trial court for a "hearing regarding the applicability of the fugitive disentitlement doctrine" because Maturino-Ruiz

2

had self-deported. Maturino-Ruiz opposed a remand. Nevertheless, on May 24, 2018, this court remanded the case to the trial court for an evidentiary hearing to determine whether Maturino-Ruiz was an absconder.

The trial court held the remand hearing on August 17, 2018. Maturino-Ruiz appeared not in person but by counsel. The State admitted as an exhibit a certified copy of "a Department of Homeland Security Citizenship and Immigration Services certification that [Maturino-Ruiz] voluntarily departed from the country." The State's only witness was Sedgwick County Sheriff's Deputy Noah Stephens-Clark. Deputy Stephens-Clark worked in the fugitive warrant section of the sheriff's department. He stated that he started to actively look for Maturino-Ruiz on August 15, 2018. He stated that Maturino-Ruiz had no vehicle registered in Kansas and no Kansas driver's license. Deputy Stephens-Clark also stated that he visited both Maturino-Ruiz' most recent known address and second most recent address and did not find Maturino-Ruiz living at either place.

He further testified that apartment complex staff at the most recent address stated that Maturino-Ruiz had been deported. He testified that he tried to contact a woman who lived with Maturino-Ruiz at his last known address, but her phone number was not working and she was no longer at that address. An employee at the apartment complex also stated that Maturino-Ruiz sometimes used a different name; Stephens-Clark found no registered vehicles or driver's license under this name either. Deputy Stephens-Clark stated that he contacted "an agent with the Department of Homeland Security who confirmed that [Maturino-Ruiz] was deported in September of 2017." The agent e-mailed Deputy Stephens-Clark that Maturino-Ruiz was "deported back to Mexico on 9-1-17 through Brownsville, Texas."

The State argued that Maturino-Ruiz "chose to voluntarily exit this country" and therefore absconded. Further, the State argued that its reasonable efforts to locate

3

Maturino-Ruiz were unsuccessful, as there was "no reason to believe that since his voluntary exit to Mexico, where he chose to leave, that he has since chosen to come back."

Maturino-Ruiz' attorney argued that Deputy Stephens-Clark's efforts to locate Maturino-Ruiz did not constitute "reasonable efforts" to locate Maturino-Ruiz, particularly because the deputy did not begin searching until two days before the hearing.

The trial court ruled that the State showed by a preponderance of the evidence that Maturino-Ruiz absconded. The trial court also ruled that the State had made reasonable efforts to find Maturino-Ruiz. Accordingly, the trial court concluded that Maturino-Ruiz was a fugitive within the meaning of *State v. Raiburn*, 289 Kan. 319, 212 P.3d 1029 (2009). Maturino-Ruiz timely appealed this ruling.

*Should This Court Dismiss Maturino-Ruiz' Appeal Under the Fugitive Disentitlement Doctrine?*

The fugitive disentitlement doctrine allows this court to dismiss a pending appeal "when a criminal defendant has chosen to thwart the appellate process by absconding from the jurisdiction of the courts." *Raiburn*, 289 Kan. 319, Syl. ¶ 1. The State has the burden "to raise the issue to the appellate court by filing a motion to dismiss the appeal alleging grounds that the defendant is a fugitive." 289 Kan. at 332. If the State's motion is sufficient, this court remands the case to the trial court for a hearing to determine the defendant's fugitive status; there the State must show by a preponderance of the evidence that a defendant "has more likely than not chosen to abscond from the reach of the courts and reasonable measures have been taken to locate him or her which have proved unsuccessful." 289 Kan. 332, Syl. ¶ 4.

4

Here, on remand from this court, the trial court determined that Maturino-Ruiz was indeed a fugitive. This court reviews this finding to determine if it is supported by substantial competent evidence. 289 Kan. at 332. Substantial competent evidence is evidence that a reasonable person would consider sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

Maturino-Ruiz, in his second brief, argues that the trial court's conclusion that he absconded was not supported by substantial competent evidence because "the State presented no evidence that [he] was forever barred from legally reentering" the United States, nor did the State show that he "had any realistic chance of lawfully remaining in the United States had he tried to fight deportation." For his argument, Maturino-Ruiz relies heavily on an unpublished 2011 decision from this court, *State v. Gutierrez-Hernandez*, No. 101,984, 2011 WL 3658360 (Kan. App. 2011) (unpublished decision) *rev. denied* 293 Kan. 1110 (2012).

In *Gutierrez-Hernandez*, the trial court concluded that the defendant was an absconder and no reasonable efforts were taken to find him, based on the following facts:

> "Gutierrez-Hernandez was granted probation . . . at sentencing, Gutierrez-Hernandez indicated that he would be able to post a bond regarding his federal immigration case and that his deportation was 'relatively speculative'; that Gutierrez-Hernandez was released from Johnson County custody on January 29, 2009; that he was ordered, based on his voluntary waiver and stipulated order with the immigration judge, to be removed from the country, of which Gutierrez-Hernandez applied for no relief; that Gutierrez-Hernandez was escorted out of the country and into Mexico on February 17, 2009; that he never reported to his probation officer; that a motion to revoke Gutierrez-Hernandez' probation was filed; and a bench warrant remained active as of the date of the hearing on Gutierrez-Hernandez' status as an absconder." 2011 WL 3658360, at *1.

Gutierrez-Hernandez appealed, arguing that he was not an absconder within the meaning of *Raiburn*. 2011 WL 3658360, at *1. A panel of this court held that "the State did not present any evidence whatsoever that it made a reasonable effort to locate Gutierrez-Hernandez. Based on a simple reading of the element, the State has failed to meet its burden of proof regarding the second element of the fugitive disentitlement doctrine." 2011 WL 3658360, at *3. Nevertheless, the panel opined that "the question remains as to whether reasonable efforts to locate Gutierrez-Hernandez were necessary" because the State knew he had been deported to Mexico and could not legally return to the United States for 5 to 20 years. 2011 WL 3658360, at *3. The panel further pointed out that "Gutierrez-Hernandez will, at some point, be allowed to reenter the country and perhaps be subject, once again, to this court's jurisdiction." 2011 WL 3658360, at *4. The panel decided to maintain Gutierrez-Hernandez' appeal. 2011 WL 3658360, at *4.

The State correctly points out that this court is not bound to follow the unpublished decision of another panel. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010). Nevertheless, we find that *Gutierrez-Hernandez* was well-reasoned, particularly in light of our Supreme Court's recent decision in *State v. Dooley*, 308 Kan. 641, 657, 423 P.3d 469 (2018). In *Dooley*, our Supreme Court clarified what it means to "abscond." It held that in order to have absconded, someone must have "engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process." 308 Kan. at 657. We are not convinced that the State's evidence about Maturino-Ruiz' self-deportation provided substantial competent evidence that Maturino-Ruiz had a "conscious intent to hide from or otherwise evade the legal process." The evidence here showed that Maturino-Ruiz was presented with the choice of either following the immigration judge's order and self-deport, or violating the judge's order, refusing to self-deport, and therefore facing either forceful deportation or an outstanding warrant for evading the law. We cannot say that by complying with the immigration judge's order here that Maturino-Ruiz demonstrated a conscious intent to hide from or evade justice. Because the trial court's finding that Maturino-Ruiz absconded was not

supported by substantial competent evidence, we cannot dismiss his appeal under the fugitive disentitlement doctrine as the State requests. We therefore proceed to address Maturino-Ruiz' sentencing claims on their merits.

*Did the Trial Court Err When Sentencing Maturino-Ruiz?*

Under K.S.A. 2015 Supp. 8-1567(b)(1)(D), a person's third DUI conviction is a nonperson felony if that person was convicted of DUI within the preceding 10 years. Here, Maturino-Ruiz' PSI report showed two prior convictions for DUI within the preceding 10 years: one from Riverside County California Superior Court in 2006, and one from Wichita Municipal Court in 2011. At sentencing, the trial court judge ruled that Maturino-Ruiz "had two prior DUI convictions within the last 10 years." Accordingly, the trial court found that Maturino-Ruiz' conviction was a nonperson felony, and sentenced him to 48 hours in jail followed by 90 days of house arrest and then 12 months of postimprisonment supervision.

Maturino-Ruiz argues that the trial court erred by considering both his California DUI conviction and his Wichita municipal DUI conviction as prior convictions for the purposes of sentencing. The State declined to address Maturino-Ruiz' sentencing claims in its brief, choosing only to argue the fugitive disentitlement issue.

*Wichita Municipal DUI*

Maturino-Ruiz argues that the trial court erred by considering the 2011 Wichita conviction as a previous DUI conviction. In August 2018, our Supreme Court clarified that pre-2016 Wichita municipal DUI convictions cannot be counted as previous convictions for the purposes of K.S.A. 8-1567. *State v. Gensler*, 308 Kan. 674, 685, 423 P.3d 488 (2018). This is because the elements of the pre-2016 Wichita municipal DUI ordinance were not the same as or narrower than the elements of K.S.A. 8-1567. 308

7

Kan. at 685. Thus, the trial court here erred by considering Maturino-Ruiz' 2011 Wichita municipal DUI as a prior DUI for the purposes of sentencing and classifying his conviction as a felony.

*California DUI*

Maturino-Ruiz is correct that the trial court should not have used his Wichita municipal DUI to enhance his sentence. Thus, his Kansas conviction was either his first or second DUI conviction for the purposes of K.S.A. 2015 Supp. 8-1567. Whether it was his first or second DUI conviction depends on whether the trial court could properly consider his California conviction. Maturino-Ruiz argues that he "stipulated that he had a prior California DUI conviction. But he didn't stipulate what kind of California DUI he was convicted of committing."

K.S.A. 2015 Supp. 8-1567(i) establishes the criteria courts use to determine whether prior DUI convictions may be counted as prior convictions in order to increase sentences and classify DUIs. At the time of Maturino-Ruiz' offense here, K.S.A. 2015 Supp. 8-1567(i)(3) stated that a "conviction" includes "conviction of a violation of . . . any law of another state which would constitute a crime described in (i)(1) or (i)(2)." K.S.A. 2015 Supp. 8-1567(i)(1) stated that courts should take into account convictions for "violation of this section, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that this section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations."

In *Gensler*, our Supreme Court ruled that courts must apply a modified categorical approach to determine whether prior DUI convictions should be counted. *Gensler*, 308 Kan. at 681. "If the comparison of the ordinance underlying the prior conviction and K.S.A. 8-1567 shows that the elements of the prior conviction are the same as, or

8

narrower than, the elements of K.S.A. 8-1567, then the prior DUI conviction may be counted." 308 Kan. at 681.

Maturino-Ruiz' PSI report indicates that his 2006 California conviction for DUI was under statute "2315.2." This appears to be a typo or transcription error of some kind; California Vehicle Code § 23152 is the state's DUI statute. The version of the statute in effect at the time of Maturino-Ruiz' 2006 conviction had multiple subsections, including:

> "(a) It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle.
>
> "(b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.
>
> "For purposes of this article and Section 34501.16, percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.
>
> "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving.
>
> "(c) It is unlawful for any person who is addicted to the use of any drug to drive a vehicle. This subdivision shall not apply to a person who is participating in a narcotic treatment program approved pursuant to Article 3 (commencing with Section 11875) of Chapter 1 of Part 3 of Division 10.5 of the Health and Safety Code." Cal. Vehicle Code § 23152 (West 1995).

Because the PSI report does not indicate what subsection of the California code Maturino-Ruiz was convicted under, this court cannot compare the elements of Maturino-Ruiz' prior crime of conviction to the elements of K.S.A. 2015 Supp. 8-1567. Thus, we remand to the trial court to determine what subsection Maturino-Ruiz was convicted under. If that information is not clear from his conviction, the trial court should use the

9

"modified categorical approach" as outlined by our Supreme Court in *Gensler* to determine if the California DUI statute is divisible and, if so, whether Maturino-Ruiz was convicted under a subsection that has elements the same or narrower than K.S.A. 2015 Supp. 8-1567. See *Gensler*, 308 Kan. at 680-83. If Maturino-Ruiz was convicted under a subsection with elements that are the same or narrower than K.S.A. 2015 Supp. 8-1567, the trial court should resentence him according to K.S.A. 2015 Supp. 8-1567(b)(1)(B). If the trial court concludes that California Vehicle Code § 23152 is not divisible or if it is unable to determine what subsection of the code Maturino-Ruiz was convicted under, then it should resentence Maturino-Ruiz according to K.S.A. 2015 Supp. 8-1567(b)(1)(A).

Reversed and remanded for resentencing consistent with this opinion.