IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,761

STATE OF KANSAS,
*Appellee*,

v.

COREY LEROY YAZELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

Because the Kansas Adult Supervised Population Electronic Repository is unreliable evidence, courts may not rely on it to make factual findings.

2.

A case is moot when a court determines it is clearly and convincingly shown that the actual controversy has ended, that the only judgment that could be entered would be ineffectual for any purpose, and that it would not have an impact on any of the parties' rights.

3.

The completion of a sentence does not necessarily render a claim moot.

Review of the judgment of the Court of Appeals in an unpublished order filed January 5, 2018. Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed June 19, 2020.

Judgment of the Court of Appeals dismissing the appeal is reversed and the case is remanded to the Court of Appeals with directions.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen A. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Corey Leroy Yazell appealed from the revocation of his probation following an out-of-state arrest. The Court of Appeals issued an order dismissing the appeal as moot. We reverse and remand to the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

On January 4, 2016, Yazell entered into a plea agreement, pleading guilty to one count of possession of methamphetamine and one count of driving while suspended. On March 4, 2016, the district court sentenced Yazell to 14 months of prison for the methamphetamine charge and a concurrent 90 days for the driving charge. The court then suspended the imposition of that sentence and placed Yazell on 12 months of probation.

On September 12, 2016, the State filed a motion to revoke Yazell's probation. The motion alleged several violations of his probation conditions. It alleged he was arrested in Missouri on July 7, 2016, on drug charges, he failed to report to his probation officer on multiple occasions, he was associating with individuals with criminal histories, and he failed to satisfy outstanding warrants in Missouri.

2

On October 6, 2016, the district court conducted a hearing on the State's motion. Over Yazell's hearsay objections, Yazell's compact officer, who was the Kansas officer entrusted with managing his case while Yazell continued to live in Missouri, testified to information she had received in interstate compact reports from Missouri. The court elected to impose the original sentence of 14 months of prison for the methamphetamine charge and a concurrent 90 days for the driving charge, with 12 months of postrelease supervision. Yazell took a timely appeal to the Court of Appeals.

On May 2, 2017, Yazell filed a brief with the Court of Appeals. He raised one argument: that the district court improperly relied on hearsay testimony to support probation revocation, and the consequence was inconsistent with due process requirements. On September 1, 2017, the State filed its responsive brief, in which it argued that Yazell's due process rights had been satisfied.

On December 13, 2017, the Court of Appeals issued an order sua sponte directing the parties to show cause why the appeal should not be dismissed as moot due to Yazell's release from custody. Answering the order to show cause, the State relied on the website maintained by the Kansas Department of Corrections—Kansas Adult Supervised Population Electronic Repository (KASPER). The State averred: "The Kansas Department of Corrections website shows that, on May 10, 2017, Yazell was released from custody onto post-release; on November 10, 2017, Yazell's sentence expired. He is no longer under supervision." The response continued: "The State confirmed as much with a phone call to Cherryl Hensley—Senior Administrative Specialist with the Kansas Department of Corrections Sentence Computation Unit—on December 19, 2017."

Yazell responded by asserting that the State had not proved he was no longer affected by revocation. He pointed out that, by its own conditions, KASPER is not to be

3

relied on for accuracy. He also questioned the legal reliability of Cherryl Hensley and pointed out that it was an unsworn ex parte communication not subject to cross-examination. Yazell neither confirmed nor denied that he was still in custody. He, instead, suggested that a remand for a hearing was the appropriate procedure.

The Court of Appeals noted the responses and dismissed the appeal without revealing any analysis. It simply informed the parties: "Response to Show Cause considered by the Court and case dismissed as moot." We granted Yazell's petition for review.

ANALYSIS

Yazell argues that the Court of Appeals erred when it relied on a printout from KASPER and the State's factual assertion about a phone call with Hensley to find that Yazell had completed his sentence. Yazell also argues that, even if this was not an error and he has completed his sentence, his case is not moot because a finding that he violated probation could be used as evidence that he is not amenable to probation in future cases.

We turn to his first allegation of error. This issue contemplates the legal effect of an evidentiary submission to the appellate courts. The standard of review is de novo because there is no district court factual finding. See *In re Burnette*, 73 Kan. 609, Syl. ¶ 5, 85 P. 575 (1906).

Generally, Kansas appellate courts do not make factual findings. This task is reserved for district courts, where evidence is offered and tested. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009) ("Appellate courts do not make factual findings but review those made by district courts."). If an appellate court reviews the district

4

court's factual findings, it generally does so only to ensure that substantial competent evidence supported those findings; it does not reweigh or reassess the evidence. *State v. Jenkins*, 311 Kan. 39, 45, 455 P.3d 779 (2020) (This court reviews the factual underpinnings of a district judge's legal ruling for substantial competent evidence."); *State v. Galloway*, 311 Kan. __, 459 P.3d 195, 202 (2020) (court does not reweigh evidence or assess witness credibility when reviewing for substantial competent evidence).

But there are times when an appellate court is called upon to make a finding of its own. One of those times occurs in this appeal—where a party alleges that a change in circumstance since the district court proceedings has rendered an action moot. Before the appellate court may consider mootness, it must confirm the change in circumstance.

Appellate fact-finding is simple when both parties agree that a change has taken place, or the change is so ubiquitous the court may take judicial notice of its happening. K.S.A. 60-409(a) (allowing courts to take judicial notice of facts of "generalized knowledge"). When the parties do not agree that a change has occurred, appellate fact-finding becomes more difficult. The appellate forum is not conducive to the taking or testing of evidence. For this reason, appellate courts must carefully scrutinize the reliability of evidence before making the rare finding of fact.

The Court of Appeals order dismissing Yazell's appeal was brief and vague. For this reason, we do not know on what the panel relied on to conclude that Yazell's case was moot. Yazell insists the panel looked to the KASPER printout and the State's description of its alleged phone call confirming the KASPER information to find that he had been released from custody. To the extent this is what occurred, it was an error.

5

Kansas appellate courts have taken inconsistent positions on the reliability of KASPER and similar sources from off the record.

Without explaining why KASPER is reliable, several Court of Appeals decisions have cited to it as a proper source of information about inmates, including such details as time of incarceration and disciplinary issues.

In *State v. Upham*, No. 97,961, 2008 WL 1847703 (Kan. App. 2008) (unpublished opinion), the Court of Appeals confronted a question essentially the same as in the present appeal. The State presented printouts from KASPER as well as a form from the Department of Corrections showing the defendant was on supervised parole. The defendant neither confirmed nor denied his noncustodial status. Without analyzing the reliability of KASPER as a source, the Court of Appeals dismissed the appeal as moot. 2008 WL 1847703, at *2.

In *State v. Flores*, No. 100,496, 2009 WL 1766258 (Kan. App. 2009) (unpublished opinion), the Court of Appeals reached factual conclusions about the defendant's jail time credit based on KASPER documents furnished by defense counsel. The court did not question or analyze the reliability of KASPER records. 2009 WL 1766258, at *1.

In *State v. Harbacek*, No. 111,687, 2015 WL 3632321 (Kan. App. 2015) (unpublished opinion), the Court of Appeals relied heavily on a KASPER printout in examining whether the defendant was entitled to jail time credit. The appellate court eventually found the evidence insufficient to answer the question before it and remanded to the district court for a factual hearing. 2015 WL 3632321, at *6.

Again, in *State v. Hastings*, No. 112,222, 2016 WL 852857 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1324 (2017), the State submitted a KASPER printout purporting to show that the defendant was no longer under sentence as the appeal proceeded. The Court of Appeals considered it "important" that the defendant made no effort to rebut the State's assertion of noncustodial status and dismissed the sentencing portion of the appeal as moot. 2016 WL 852857, at *6.

But both the Court of Appeals and this court have also rejected turning to sources outside official records and the evidence introduced at trial.

In *In re K.B.J.*, No. 102,922, 2010 WL 348294, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 290 Kan. 1094 (2010), the Court of Appeals held, in a parental rights proceeding, that the district court erred in taking judicial notice of information the court services officer obtained from KASPER. The court wrote:

"Any user of KASPER must first confirm the DOC's explicit disclaimer that it assumes no legal liability or responsibility for the accuracy, completeness, or usefulness of any information, product, or process disclosed, nor represents that its use would not infringe on privately owned rights. See http://www.dc.state.ks.us/kasper. In this disclaimer, the DOC explicitly does not guarantee the accuracy of the information contained therein. Obviously, given the DOC's disclaimers, information found therein could reasonably be the subject of dispute, so it is not subject to judicial notice." 2010 WL 348294, at *2.

Again, in *State v. Ellis*, No. 110,904, 2015 WL 1402820 (Kan. App. 2015) (unpublished opinion), the Court of Appeals rejected information that the State provided from the KASPER website with the intent of demonstrating mootness. The court wrote:

7

"But given the disclaimer set forth by the KDOC on the KASPER website, however, we are precluded from taking judicial notice of the fact that Ellis was placed on postrelease supervision on June 3, 2014. Before using the KASPER website, all users are required to first confirm the KDOC's explicit disclaimer . . . . In this disclaimer, the KDOC explicitly does not guarantee the accuracy of the information contained on the KASPER website. Given the KDOC's disclaimers, information found on the KASPER website could reasonably be the subject of dispute; thus, that information is not subject to judicial notice." 2015 WL 1402820, at *2.

In *State v. Heil*, No. 106,578, 2012 WL 5392115 (Kan. App. 2012) (unpublished opinion), the court declined to rely on KASPER as dispositive for establishing amounts of jail time credit. The court accordingly remanded to the district court for a hearing. 2012 WL 5392115, at *4.

Without specifically addressing the competence and admissibility of KASPER documents, this court has weighed in on the admissibility of similar documents as evidence tending to demonstrate an appellant's custodial status.

In *State v. Raiburn*, 289 Kan. 319, 212 P.3d 1029 (2009), in analyzing the fugitive disentitlement doctrine, this court held that mere allegations by the State that a defendant was not in custody were insufficient to justify a judicial finding that the defendant was a fugitive. The court, instead, required a remand to the district court where a factual hearing could be held and where the State might prove, by a preponderance of the evidence, that the defendant was no longer in custody. 289 Kan. at 332-33.

In *State v. Brownlee*, 302 Kan. 491, 354 P.3d 525 (2015), this court considered a speedy trial issue. The State sought to augment the appellate record using an arrest warrant and accompanying report that were not introduced at trial. This court refused to

8

consider or take judicial notice of the documents because they were not among the original papers filed in district court and because they were not capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy. 302 Kan. at 506. The decision cited *State v. Taylor*, 198 Kan. 290, 299, 424 P.2d 612 (1967), which held that uncertified machine copies of Federal Bureau of Investigation and KBI rap sheets were hearsay and not governed by Kansas statutes on judicial notice. 302 Kan. at 506. It also cited favorably *In re K.B.J.*, 2010 WL 348294, rejecting recognition of KASPER printouts as discussed above. 302 Kan. at 504-06.

The reasoned approach by appellate courts to date has been to reject basing appellate decisions on KASPER and similar documentation. This makes sense. Before accessing the KASPER database, users are required to agree with a disclaimer, which includes this language:

> "The information contained on this website is subject to disclosure pursuant to the Kansas Open Records Act (K.S.A. 45-221). While the information is believed to be accurate, the State of Kansas, the Kansas Department of Corrections, their employees or officers, make no warranties, express or implied, including warranties of merchantability and fitness for a particular purpose. Further the Kansas Department of Corrections assumes no legal liability or responsibility for the accuracy, completeness, or usefulness of any information, product, or process disclosed, nor represents that its use would not infringe on privately owned rights." https://kdocrepository.doc.ks.gov/kasper/search/disclaimer

The website, therefore, makes no claim to authenticity or reliability. Furthermore, the documentation is not certified, and the individuals who generate the site are not available for cross-examination at the appellate level. It is the kind of information on which judicial decisions should not be based, which is what this court held in *Taylor*, *Raiburn*, and *Brownlee*.

In line with these reasoned cases, we conclude that the Court of Appeals erred to the extent that it relied on KASPER and the State's hearsay assertions about a Corrections employee confirming the accuracy of the report. Because the panel's order does not reveal its factual source, we must reverse its decision and remand the case to the Court of Appeals. We acknowledge the possibility that the panel turned to a reliable source but failed to describe that source in its ruling. If this is the case, the panel should describe this source and its reliability upon remand.

We must also address the panel's conclusion that Yazell's case was moot. The panel's order is silent on what led it to this conclusion. Assuming the panel based its decision on a finding that Yazell completed his sentence, this was also an error.

In *State v. Roat*, 311 Kan.__, __P.3d__ (No. 113,531, this day decided), we explained that a case does not become moot simply because a defendant completed his or her sentence. It is moot only "when a court determines that 'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'" *Roat*, No. 113,531, slip op. at 6 (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]). Before dismissing a case as moot, a court must exercise caution and give "due consideration" to any assertion of affected rights. *Roat*, No. 113,531, slip. op at 14.

Upon remand, should the panel again find that Yazell has completed his sentence, it should reconsider whether his case is moot.

Reversed and remanded to the Court of Appeals with directions.

10

MARK ALAN WARD, District Judge, assigned.[1]

---

[1] [1]**REPORTER'S NOTE:** District Judge Mark Ward was appointed to hear case No. 116,761 under the authority vested in the Supreme Court by art. 3, § 6(f) the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.